Rose Firestein (RF 9505)
Office of the Attorney General of the State of New York
Charities Bureau
120 Broadway, 3rd Floor
New York, NY 10271
(212) 416-8325
Attorney for the Ultimate Charitable Beneficiaries

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
DONALD M. THEA and DEBORAH L. THEA          :

                Plaintiffs,          :

               v.          :          Civil Action No. 13-cv-4895 (PKC)

NEIL C. KLEINHANDLER, individually and as          :
Trustee of the FREDERICA FISHER THEA
REVOCABLE TRUST, NEW SCHOOL          :
UNIVERSITY, and ERIC T. SCHNEIDERMAN
As Attorney General of the State of New York,          :

            Defendants.          :
------------------------------------------------------------x

# ATTORNEY GENERAL'S MEMORANDUM OF LAW CONCERNING CHOICE-OF-LAW AND STATUTES OF LIMITATIONS RAISED BY PLAINTIFFS' MOTION <u>FOR LEAVE TO FILE SECOND AMENDED COMPLAINT</u>

ERIC T. SCHNEIDERMAN
Attorney General of
   the State of New York
120 Broadway, 3rd Floor
New York, New York 10271
Attorney for the Ultimate
   Charitable Beneficiaries
rose.firestein@ag.ny.gov

# TABLE OF CONTENTS

Page(s)

**PRELIMINARY STATEMENT** ...................................................................................1

**OVERVIEW OF THE ARGUMENT** ...........................................................................1

**FACTUAL BACKGROUND** ......................................................................................2

**ARGUMENT** ...............................................................................................................4

    A.   New York's Choice of Law Rules Govern Which Statute
        Of Limitations Applies to the Plaintiffs' Claims ...............................................4

    B.   The California Statute of Limitatons: Calif. Code of
        Civ. Pro. § 366.3 .............................................................................................8

**CONCLUSION** .........................................................................................................11

**Copies of Unpublished Opinions**
*Baena v. Woori Bank*,
    2006 U.S. Dist. LEXIS 74549 (S.D.N.Y Oct. 11, 2006)

*Deruiter v. Vaules*,
    2005 U.S. Dist. LEXIS 44405 (N.D.N.Y. Oct. 18, 2005)

*Norex Petroleum Ltd. v. Blavatnik*,
    2014 N.Y. LEXIS 1446 (June 26, 2014)

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baena v. Woori Bank*,
  2006 U.S. Dist. LEXIS 74549 (S.D.N.Y Oct. 11, 2006) ..........................................................6

*Bianco v. Erkins (In re Gaston & Snow)*,
  243 F.3d 599 (2d Cir. 2001) .............................................................................................5, 6

*California Sansome Co. v. U.S. Gypsum*,
  55 F.3d 1402 (9th Cir. 1995) ..............................................................................................11

*Cantor Fitzgerald, Inc. v. Lutnick*,
  313 F.3d 704 (2002) ...................................................................................................4, 5, 10

*Deruiter v. Vaules*,
  2005 U.S. Dist. LEXIS 44405 (N.D.N.Y. Oct. 18, 2005) ....................................................6

*Erie R.R. v. Tompkins*,
  304 U.S. 64 (1938) ........................................................................................................1, 4, 7

*Estate of Ziegler*,
  187 Cal. App. 4th 1357 (2010) ...................................................................................9, 10, 11

*Ferraro v. Camarlinghi*,
  161 Cal. App. 4th 509 (2008) ....................................................................................9, 10, 11

*Global Fin. Corp. v. Triarc Corp.*,
  93 N.Y.3d 525 (1999) .......................................................................................................5, 6

*In re Thomas v. McLaughlin*,
  28 Misc. 3d 300 (Sur. Ct. Broome County 2010) ................................................................6

*Liberty Synergistics, Inc. v. Microflo Ltd.*,
  718 F.3d 138 (2d Cir. 2013) ................................................................................................4

*Maxwell-Jolly v. Martin*,
  198 Cal. App. 4th 347 (2011) ..............................................................................................8

*McMackin v. Ehreheart*,
  194 Cal. App. 4th 128 (2011) .....................................................................................9, 10, 11

*Norex Petroleum Ltd. v. Blavatnik*,
  2014 N.Y. LEXIS 1446 (June 26, 2014) ..............................................................................5

*Portfolio Recovery Assoc., LLC v. King*,
    14 N.Y.3d 410 (2010)...................................................................................5, 6

*Stewart v. Seward*,
    148 Cal. App. 4th 1513 (2007) .........................................................11

*Tanges v. Heidelberg North America, Inc.*,
    93 N.Y.2d 48 (1999).........................................................................4

**Federal Statutes**

28 U.S.C.
    § 1332(c)(3) .....................................................................................6

Rules of Decision Act, 28 U.S.C.
    § 1652 ..............................................................................................4

**State Statutes**

Cal. Code of Civ. Pro.
    § 366.2 .............................................................................................8
    § 366.3 ......................................................................................passim

CPLR
    § 202 .........................................................................................passim

Surrogate's Court Procedure Act
    § 2105 ..............................................................................................7

**Miscellaneous Authorities**

1 Weinstein-Korn-Miller, *NY Civ Prac P* 202..........................................6

Cal. Stats. Ch 348 § 3 (SB 308).............................................................8

Cal. Assem. Com. On Judiciary, Analysis of
    Assem. Bill No. 149 (1999-2000 Reg. Sess.) ........................................9

## PRELIMINARY STATEMENT

Eric T. Schneiderman, the Attorney General of the State of New York, appearing as the representative of the ultimate beneficiaries of a charitable gift to defendant New School University (the "New School"), submits this memorandum pursuant to the Court's Order of July 11, 2014, inviting the parties to address the statute of limitations and choice-of-law questions raised by plaintiffs' motion for leave to file a second amended complaint. These issues arise in the context of a motion for leave to amend because if plaintiffs originally filed the instant action after the applicable limitations period had expired, granting plaintiffs' motion to amend their complaint should be denied as futile.

## OVERVIEW OF THE ARGUMENT

In determining the relevant statute of limitations in this diversity action, the Court must first apply New York's entire body of choice-of-law standards to determine the rules of decision that would apply had the case been brought in a New York state court. Those state-law rules of decision that are "substantive" under the substantive/procedural dichotomy of *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938) ("*Erie*") and its progeny determine which state's statute of limitations is applicable, in this case, the New York or California statute.

Statutes of limitation, including all tolling and extension rules, and the state's borrowing statute – CPLR § 202 in New York – are substantive for *Erie* purposes, even though New York courts treat them as procedural. When, as here, the plaintiff is not a resident of New York and the causes of action accrued outside the state, CPLR § 202 requires the Court to apply the shorter of the New York statute of limitations or the limitations period of the place where the cause of action accrued.

Plaintiffs' claims are based on the asserted invalidity of a trust that their stepmother Frederica Fisher Thea ("Frederica") created and into which she transferred assets allegedly in violation of an agreement to make a will that would have benefitted plaintiffs. Plaintiffs have no standing to assert these claims until Frederica's estate (the "Estate") brings an action to recover the Estate's assets on the ground that Frederica's trust is invalid. If the Estate's claim is time-barred, the plaintiffs cannot ever bring an action to enforce any interest they may have under the contract to make a will.

Frederica died in California, making California the Estate's state of residence under the federal diversity jurisdiction statute. California is, therefore, the state where claims dependent on the invalidity of Frederica's trust accrued. (Plaintiff Deborah Thea also resides in California.)

Between New York and California, California has the shorter statute of limitations and under CPLR § 202, it must be applied to the claims asserted here. California Code of Civ. Pro. § 366.3 imposes a one-year statute of limitations for actions predicated on an agreement to make a will, regardless of the specific cause of action being asserted. It applies to actions brought by individuals who are not parties to the agreement. The claims asserted in the proposed second amended complaint arise from an agreement to make a will and are barred by § 366.3.

## FACTUAL BACKGROUND

For the limited purposes of this memorandum, the salient facts alleged in the proposed second amended complaint can be quickly stated. Stanley Thea ("Stanley"), the father of plaintiffs Donald and Deborah Thea, married Frederica. Frederica and Stanley entered into an agreement to make mutual wills that left a life estate in their property to the surviving spouse and, upon the surviving spouse's death, to the plaintiffs (the "Agreement"). Frederica and Stanley executed such wills, with the plaintiffs named as executors in Frederica's will. Stanley

predeceased Frederica and she subsequently created a revocable trust, the assets of which she could use during her lifetime with the remainder upon her death to go to the New School, a tax-exempt educational institution.  She transferred her property to the trust.  Frederica and her attorney Neil Kleinhandler ("Kleinhandler") were the trustees of the trust.  Kleinhandler had also drafted the Agreement.

Frederica died on or about February 4, 2012 in California where she had resided. Kleinhandler was aware of her death but did not notify the plaintiffs that their stepmother had died.  On July 15, 2013, approximately 18 months after Frederica died, the plaintiffs initiated the instant action alleging that Frederica, with Kleinhandler's assistance, created the trust in order to circumvent the will she had made in accordance with the Agreement.  Plaintiffs amended their complaint and defendants Kleinhandler and the New School moved to dismiss.  The Attorney General filed an answer.

On May 12, 2014, the Court entered a Memorandum and Order dismissing plaintiffs' amended complaint for lack of standing (the "Order of dismissal").  It held that plaintiffs cannot establish that the property Frederica transferred to her trust is rightfully theirs unless the trust is invalidated through an action to recover estate assets and that such an action can only be brought "on behalf of the estate" by the Estate's personal representative. (Order of dismissal at 5-6, 8-10)

Plaintiffs were given an opportunity to seek appointment of a personal representative of the Estate and amend their complaint to add the personal representative as a party.  A California Probate Court granted them letters of special administration of the Estate and they moved in this Court for leave to file a second amended complaint.  The Court subsequently invited the parties to address more fully the choice-of-law and statute of limitations issues raised by Kleinhandler and the New School's opposition to such leave being granted.  Their opposition papers asserted

that plaintiffs' claims are time-barred and leave to file their proposed second amended complaint

should be denied because filing it would be a futile act.

## ARGUMENT

### A.   NEW YORK'S CHOICE-OF-LAW RULES GOVERN WHICH STATUTE OF LIMITATIONS APPLIES TO THE PLAINTIFFS' CLAIMS

The Second Circuit recently described the proper analysis in diversity cases for choosing

the applicable statute of limitations under the Rules of Decision Act, 28 U.S.C. § 1652,[1] in

*Liberty Synergistics, Inc. v. Microflo Ltd.*, 718 F.3d 138, 151-52 (2d Cir. 2013)  (internal

references and citations omitted, emphasis in original):

> As interpreted by the Supreme Court, the Rules of Decision Act, 28 U.S.C.
> § 1652, provides that federal courts exercising diversity jurisdiction over a state-
> law claim must consider two conceptually distinct issues.  First, a federal court
> exercising diversity jurisdiction must apply the choice-of-law rules of the state in
> which that court sits to determine the rules of decision that would apply if the suit
> were brought in state court.  Though constrained in some respects by the United
> States Constitution, this choice-of-law inquiry is an issue of *state* law.  Second,
> after using state conflict-of-laws principles to ascertain the rules of decision that
> would apply in the state courts of the federal forum, federal courts apply those
> state rules of decision that are "substantive" under *Erie* and are consistent with
> federal law.

It is well settled that whether a particular state choice-of-law provision is substantive or

procedural for *Erie* purposes is a question of federal law.  *Id.* at 143-44, 152.  New York courts

treat most statutes of limitations as procedural rules, *Tanges v. Heidelberg North America, Inc.*,

93 N.Y.2d 48 (1999), but federal courts do not.  Statutes of limitations, their accompanying

tolling and commencement rules and a state's borrowing statute – CPLR § 202 in New York –

are all on the substantive side of the ledger in an *Erie* analysis.  *Cantor Fitzgerald, Inc. v.*

---

[1] The Rules of Decision Act provides: "The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decision in civil actions in the courts of the United States, in cases where they apply."

*Lutnick*, 313 F.3d 704, 710 (2002) ("*Cantor Fitzgerald*"); *Bianco v. Erkins (In re Gaston &
Snow)*, 243 F.3d 599, 607-608 (2d Cir. 2001) ("*Bianco*").  In combination, they are part of the
choice-of-law rules of the forum state and, in the instant case, determine whether the New York
or California statutes of limitation, tolling and limitation-period commencement rules govern
plaintiffs' claims.

> CPLR § 202 provides as follows:

> § 202.  Cause of action accruing without the state

> An action based upon a cause of action accruing without the state cannot
> be commenced after the expiration of the time limited by the laws of either the
> state or the place without the state where the cause of action accrued, except that
> where the cause of action accrued in favor of a resident of the state the time
> limited by the laws of the state shall apply.

Under § 202, "a case filed by a non-resident plaintiff requires application of the shorter
statute of limitations period, as well as all applicable tolling provisions, provided by either New
York or the state where the cause of action accrued."  *Cantor Fitzgerald*, 313 F.3d at 710; *accord
Norex Petroleum Ltd. v. Blavatnik*, 2014 N.Y. LEXIS 1446 at *18 (June 26, 2014) ("*Norex*"); [2]
*Portfolio Recovery Assoc., LLC v. King*, 14 N.Y.3d 410, 416 (2010) ("*Portfolio*"); *Global Fin.
Corp. v. Triarc Corp.,* 93 N.Y.3d 525, 528 (1999) ("*Global Fin.*").  CPLR § 202 requires a
comparison of the net limitations periods: the New York statute of limitations including all its
extension and tolling provisions compared to the accrual state's limitations period with its
extension and tolling provisions.  *Norex*, 2014 N.Y. LEXIS at *20-*21.  A provision in an
instrument designating a particular state's law as controlling does not trump CPLR § 202.
*Portfolio*, 14 N.Y.3d at 416-17.

Section 202 is applicable here because the plaintiffs are non-residents of New York.  As
individuals and creditors, Donald Thea resides in Massachusetts and Deborah Thea resides in

---

[2] Copies of unpublished decisions are annexed at the end of this memorandum.

California.  Frederica was a resident of California when she died and the Estate and plaintiffs as personal representatives of the Estate are consequently residents of California.  28 U.S.C. § 1332(c)(3).  *E.g.*, *Deruiter v. Vaules*, 2005 U.S. Dist. LEXIS 44405 (N.D.N.Y. Oct. 18, 2005).

The central question when applying § 202 is where the claim accrued.  The New York Court of Appeals held that this is a matter of statutory construction and "there is no indication that the Legislature intended the term ["accrue" in § 202] 'to mean anything other than the generally accepted construction applied throughout CPLR Article 2 – the time when, and the place where, the plaintiff first had the right to bring the cause of action."  *Global Fin.*, 93 N.Y.2d at 528, *quoting* 1 Weinstein-Korn-Miller, *NY Civ Prac P* 202.04 at 2-61; *Baena v. Woori Bank*, 2006 U.S. Dist. LEXIS 74549 *18 (S.D.N.Y Oct. 11, 2006).  The Court noted that the "traditional definition of accrual" in tort cases provides that "a cause of action accrues at the time and in the place of the injury," *Global Fin.*, 93 N.Y.2d at 529, and applied this same rule to contract cases.  In extending the place-of-injury analysis in this way, the Court explicitly rejected the common law "grouping of contacts" and "center of gravity" approach used to decide substantive choice-of-law issues in such cases.  93 N.Y.2d at 528-29.

"When the alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss . . .  normally the place of residence."[3]  *Id.* at 529-530; *Portfolio*, 14 N.Y.3d at 416; *see Bianco*, 243 F.3d at 608 (§ 202 is to be applied as written and is an "exception to the normal New York conflicts rule of applying the law of the jurisdiction with the most significant contacts"); *In re Thomas v. McLaughlin* (*McLaughlin*), 28 Misc. 3d at 304-05 (cases collected) (this was a turnover proceeding under

---

[3] When the plaintiff seeks possession of specific, identified property, the place of accrual is the state in which the property is located.  *See In re Thomas v. McLaughlin* (McLaughlin), 28 Misc. 3d 300, 303 (Sur. Ct. Broome County 2010).  Plaintiffs' proposed second amended complaint does not specifically seek the restoration to the Estate of the California residence.  If it had, the state of accrual for that claim would be California.

Surrogate's Court Procedure Act § 2105 for money damages; the court applied CPLR § 202 and "borrowed" a California statute of limitations based on the plaintiff's residence).

The Estate suffered a direct economic injury if Frederica improperly transferred her assets to the trust.  For plaintiffs as individuals and creditors to have standing to assert a claim that the trust's assets are rightfully theirs, the Estate must first file an action to invalidate the trust and recover its assets.  (Order of dismissal at 5-6, 8-10)  Only the Estate has standing to bring such an action.  If the Estate's prerequisite claim to invalidate the trust is barred by the statute of limitations, plaintiffs will never be able to obtain the relief they seek in the proposed second amended complaint.[4]

The Estate's claim accrued in California, its state of residence.  California's statute of limitations is shorter than any potentially relevant New York limitations period.  *Compare* CPLR Art. 2 *with* Calif. Code of Civ. Pro. § 366.3.  Under CPLR § 202, California's statute of limitations must be applied in this action.

The New York choice-of-law rules are substantive for *Erie* purposes and must be applied to determine the relevant statute of limitations.  CPLR § 202 is part of that body of law and requires the Court to apply the shorter of the New York limitations period or that of the state of accrual, California.  The California statute provides the shorter limitations period and governs the instant case.

---

[4] Plaintiffs' claims for a constructive trust over the trust's assets and an equitable accounting to determine which assets belong to the Estate are also dependent on a finding that the trust was invalid.

**B.     THE CALIFORNIA STATUTE OF LIMITATIONS: CALIF. CODE OF CIV. PRO. § 366.3**

California Code of Civ. Pro. § 366.3 is the statute of limitations applicable to all of the claims asserted in the proposed second amended complaint, with the possible exception of the claim for a breach of fiduciary duty:[5]

**§ 366.3.  Statute of limitation on promise of decedent**

**(a)** If a person has a claim that arises from a promise or agreement with a decedent to distribution from an estate or trust or under another instrument, whether the promise or agreement was made orally or in writing, an action to enforce the claim to distribution may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply.

**(b)** The limitations period provided in this section for commencement of an action shall not be tolled or extended for any reason except as provided in Sections 12, 12a, and 12b of this code, and former Part 3 (commencing with Section 21300) of Division 11 of the Probate Code, as that part read prior to its repeal by Chapter 174 of the Statutes of 2008.[6]

**(c)** This section applies to actions brought on claims concerning persons dying on or after the effective date of this section.[7]

This statute was enacted to provide a short, uniform statute of limitations for oral and written contracts to make a will in order to promote prompt settlement of estates and to conform to the one-year limitations period for claims that could have been asserted against the decedent during his or her life, Cal. Code of Civ. Pro. § 366.2.  *Maxwell-Jolly v. Martin*, 198 Cal. App. 4th 347, 355-56 (2011).  Expeditious handling of matters affecting the distribution of estates has been called a "pervasive and dominant judicial and legislative theme" and is reflected in the one-

---

[5] Hereafter, references to "all" the claims asserted in the proposed second amended complaint do not include the fiduciary duty claim.

[6] The cited sections are not relevant here.

[7] The effective date of the last amendment to Calif. Code of Civ. Pro. § 366.3 was January 1, 2010.   Stats 2009 ch 348 § 3 (SB 308).

year limitations period in § 366.3.  *McMackin v. Ehreheart*, 194 Cal. App. 4th 128, 142 (2011)

("*McMackin*").  California courts have applied § 366.3 literally even when the equities favoring

the party whose claim is barred "could hardly be more compelling."  *Estate of Ziegler*, 187

Cal. App. 4th 1357, 1359 (2010); *see McMackin*, 194 Cal. App. 4th 128 (2011) (denied

enforcement of promise to leave life partner of 14 years a life estate in the home he shared with

decedent).

Section 366.3 applies to any claim that "arises from a promise or agreement with a

decedent to distribution from an estate or trust or under another instrument."[8]  As used in

§ 366.3, "distribution" has been interpreted broadly in accordance with the statute's legislative

history as applying to "all 'equitable and contractual claims to distribution of estates.'"

*McMackin*, 194 Cal. App. 4th at 137, *quoting Estate of Ziegler*, 187 Cal. App. 4th at 1365,

*quoting* Assem. Com. On Judiciary, Analysis of Assem. Bill No. 1491  (1999-2000 Reg. Sess.)

at 4.  Although an award on a claim based on a contract to make a will is not within the technical

meaning of a "distribution," it qualifies as a "distribution" under § 366.3.  *McMackin*, 194 Cal.

App. 4th at 137; *Estate of Ziegler*, 187 Cal. App. 4th at 1365.  If they arise from a contract to

make a will, claims asserted by creditors and persons asserting rightful ownership to estate

property seek "distributions" within the meaning of § 366.3.  *Id.* (both cases).

The operation of § 366.3 to bar claims does not depend on the specific cause of action

being asserted.  Instead, the claim must "arise" from a promise or agreement to distribute estate

property.  Under § 366.3, a claim "arises" under an agreement if it is predicated on the

decedent's agreement to distribute estate property in a specified manner, *Estate of Ziegler*, 187

Cal. App. 4th at 1365; *Ferraro v. Camarlinghi*, 161 Cal. App. 4th 509, 555 (2008); and when the

---

[8] The California Court of Appeal has noted that this phrase is ungrammatical and confusing.  Instead of the current phrase "to distribution from an estate," the court suggests that the text be read as "to distribute" or "to make distribution."  *Ferraro v. Camarlinghi*, 161 Cal. App. 4th 509, 555 (2008).

agreement is the gravamen of the claim, *McMackin*, 194 Cal. App. 4th at 139.  Where a plaintiff's

theory of recovery depends on the existence and enforceability of an agreement to award estate

assets to him or her, the claim must be brought within one year of the decedent's death.  The

following causes of action have been barred under § 366.3 because they arose from an agreement

to distribute estate assets:  creditor's claims for quantum meruit or on contract; claims that seek

injunctive relief, declaratory relief as to a life estate or personal property or an accounting; and

claims that assert intentional interference with quiet enjoyment, abuse of process, trespass to

land, nuisance, breach of contract, promissory estoppel, breach of a "palimony" (*Marvin*)

agreement, breach of express trust, fraud, undue influence, unjust enrichment, constructive trust,

conversion, interference with advantageous relations and conversion.  *McMackin*, 194 Cal. App.

4th at 131 and 137; *Estate of Ziegler*, 187 Cal. App. 4th at 1365; *Ferraro*, 161 Cal. App. 4th at

524, 526-27.

Plaintiffs in the instant action seek to assert a whole raft of claims for relief, but they all

flow directly from the Agreement between Frederica and Stanley Thea.  Without the Agreement,

the Estate has no assets; they are all held by Frederica's trust.  Following the Court's Order of

dismissal, plaintiffs in their capacity as personal representatives of the Estate seek to have these

assets returned to the Estate and distributed to them as Frederica's legatees.  As discussed in the

Order of dismissal, the claims asserted in the amended complaint are dependent on the existence

and enforceability of the Agreement.  They, therefore, arise from the Agreement and are subject

to the one-year limitations period in Calif. Code of Civ. Pro. § 366.3 and its no-tolling provision.

The date on which plaintiffs' claims accrued and the limitations period began to run are

governed by California law.  *Cantor Fitzgerald*, 313 F.3d at 710.  In California (as in New

York), a claim accrues and the limitations period begins to run when the last element of the cause

of action occurs. *California Sansome Co. v. U.S. Gypsum*, 55 F.3d 1402, 1406 (9th Cir. 1995). Frederica's trust was revocable and, at any time before she died, she could have terminated the trust or transferred its assets so they would be part of her estate at her death. Her death was the last-occurring element for all of the claims asserted in the proposed second amended complaint because they all arise from the Agreement to distribute the Estate's assets after Frederica's death. *See Ferraro*, 161 Cal. App. 4th at 552-53; *Stewart v. Seward*, 148 Cal. App. 4th 1513, 1521 (2007) ("*Stewart*"); *McMackin*, 194 Cal. App. 4th at 139; *Estate of Ziegler*, 187 Cal. App. 4th at 1365. Frederica's death is also the last-occurring element for the Estate's prerequisite action to invalidate the trust.

Frederica died on or about February 4, 2012, and the original complaint in this action was filed on July 15, 2013, considerably more than the one-year limitation period imposed by Calif. Code of Civ. Pro. § 366.3. All of the claims in the second amended complaint are therefore barred.

Finally, California courts have applied Calif. Code of Civ. Pro. § 366.3 to bar claims that arose from an agreement to distribute estate assets which are asserted by someone other than a party to the agreement. *Ferraro*, 161 Cal. App. 4th at 517-19 (agreement was between plaintiff's father and stepmother); *Stewart*, 148 Cal. App. 4th at 1516.

## CONCLUSION

For the reasons set forth above, the Court should find that all of the causes of action asserted in the proposed second amended complaint are barred by Calif. Code of Civ. Pro. § 366.3, and leave to file that complaint should be denied.

Dated: July 25, 2014

Respectfully submitted,

ERIC T. SCHNEIDERMAN
Attorney General of the State of New York

By: _____
     Rose E. Firestein (RF 9505)
     Assistant Attorney General
     Charities Bureau
     120 Broadway, 3rd Floor
     New York, NY 10271
     Telephone:  212-416-8325
     Facsimile:  212-416-8393
     E-mail:     rose.firestein@ag.ny.gov

## COPIES OF UNPUBLISHED OPINIONS

*Baena v. Woori Bank*,
    2006 U.S. Dist. LEXIS 74549 (S.D.N.Y Oct. 11, 2006)

*Deruiter v. Vaules*,
    2005 U.S. Dist. LEXIS 44405 (N.D.N.Y. Oct. 18, 2005)

*Norex Petroleum Ltd. v. Blavatnik*,
    2014 N.Y. LEXIS 1446 (June 26, 2014)



**SCOTT L. BAENA, LITIGATION TRUST OF THE LEARNOUT & HAUSPIE
SPEECH PRODUCTS N.V. LITIGATION TRUST, Plaintiff, -against- WOORI
BANK (f/k/a Hanvit Bank), SHINHAN BANK, CHOHUNG BANK, and HANA
BANK, Defendants.**

**05 Civ. 7018 (PKC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK**

**2006 U.S. Dist. LEXIS 74549**

**October 11, 2006, Decided
October 11, 2006, Filed**

**SUBSEQUENT HISTORY:** Complaint dismissed at,
Motion granted by, Count dismissed at Baena v. Woori
Bank, 515 F. Supp. 2d 414, 2007 U.S. Dist. LEXIS
67839 (S.D.N.Y., 2007)
Motion denied by Baena v. Woori Bank, 2007 U.S. Dist.
LEXIS 82151 (S.D.N.Y., Nov. 5, 2007)
Complaint dismissed at Baena v. Woori Bank, 2008 U.S.
Dist. LEXIS 437 (S.D.N.Y., Jan. 2, 2008)

**COUNSEL:** [*1] For Scott L. Baena, Litigation Trustee
of the Lernout & Hauspie Speech Products N.V.
Litigation Trust, Plaintiff: David W. Trench, A.M.
Bentley, P.C., New York, NY; Richard Levy, Jr., Kathryn
Elaine Wagner, Pryor Cashman Sherman & Flynn LLP,
New York, NY.

For Chohung Bank, Defendant: Pierre H. Bergeron,
Squire, Sanders & Dempsey, L.L.P., Cincinnati, OH US;
Jeffrey E. Storch, Squire, Sanders & Dempsey L.L.P.,
New York, NY.

**JUDGES:** P. Kevin Castel, United States District Judge.

**OPINION BY:** P. Kevin Castel

**OPINION**

MEMORANDUM AND ORDER

P. KEVIN CASTEL, U.S.D.J.

Plaintiff Scott L. Baena, litigation trustee appointed
by the United States Bankruptcy Court for the District of
Delaware, brings this action on behalf of the Lernout &
Hauspie Speech Products N.V. Litigation trust ("L&H
Belgium") asserting claims relating to financial collapse
of Lernout & Hauspie Korea ("L&H Korea"). Defendants
in this action are four South Korean banks, Hanvit
Bank, Shinhan Bank, Chuhung Bank and Hana Bank, who are
alleged to have aided and abetted John Seo in the breach
of his fiduciary duties to L&H Belgium and aided and
abetted Seo in a scheme to defraud L&H Belgium. [1]

> 1   Throughout, the Republic of Korea will be
> referred to as South Korea and the Kingdom of
> Belgium as Belgium. Hanvit Bank is now known
> as Woori Bank. The Second Amended Complaint
> refers throughout to Hanvit Bank and that is the
> name used herein.

[*2] The initial complaint was filed on August 5,
2005 and was amended as of right. On December 23,
2005, with leave of court and in response to defendants'
assertions that plaintiff's pleading had not alleged fraud

Case 1:13-cv-04895-PKC   Document 56   Filed 07/25/14   Page 19 of 34

Page 2
2006 U.S. Dist. LEXIS 74549, *2

with the requisite particularity, plaintiff filed a Second Amended Complaint ("SAC"). (12/21/06 Tr. at 23)

Defendants have moved to dismiss the SAC on grounds that: (1) plaintiff lacks standing because his claims are barred under the doctrine of in par delicto and, hence, this court lacks subject matter jurisdiction; (2) the courts of South Korea present an adequate alternative forum and dismissal is appropriate under the doctrine of forum non conveniens; (3) plaintiff's claims are time-barred by the statute of limitations; (4) plaintiff has failed to allege his fraud-based claims with the particularity required by Rule 9(b), Fed.R.Civ.P. For the reasons set forth herein, I conclude that plaintiff has standing to assert all claims. I further conclude that the doctrine of forum non conveniens does not apply because there is no adequate alternative forum in which plaintiff's claims may be brought. Plaintiff's claims are not [*3] time-barred under New York law or under the laws of Belgium, which New York would borrow under CPLR § 202. I conclude that plaintiff's claims are not alleged with the particularity required by Rule 9(b) and, in that limited respect, defendants' motion to dismiss is granted with leave to replead.

Background

L&H Belgium, a public company, created and licensed software primarily in the field of speech recognition. The events giving rise to this litigation began with the 1999 decision by L&H Belgium to expand into the Pacific Rim by acquiring Bumil Information and Communications Co. Ltd. ("Bumil") from its sole shareholder, John Seo. (SAC P 16) L&H Belgium agreed to acquire Seo's shares in Bumil for a purchase price consisting of a closing payment of $ 25 million and an additional potential "earn-out" payment of $ 25 million, depending upon whether certain financial targets were achieved by December 31, 2001. (SAC PP 16-21) The transaction closed on or about September 9, 1999. The acquired entity became a wholly-owned subsidiary of L&H Belgium and was renamed L&H Korea; Seo remained as president of the Korean operation. (SAC P 20)

The SAC alleges that after the closing, L&H [*4] Korea began entering into licensing and product sale agreements with customers who had little or no credit history. (SAC P 29) Plaintiff alleges that L&H Korea, in turn, entered into agreements with the defendant banks which gave the appearance of a transfer of customer receivables to the defendant banks in exchange for discounted cash payments to L&H Korea. (SAC P 31) Because the defendant banks ostensibly assumed the credit risks of non-payment by the customers, the payments to L&H Korea appeared to have been made on a "without recourse" basis, thereby entitling them to be recognized as revenue by L&H Korea. (SAC P 30) The SAC alleges that, in truth and in fact, there was a second set of "secret" agreements with the defendant banks which required that the "payments" to L&H Korea be placed in "restricted time deposit accounts" as "collateral" for the "advances". [2] (SAC P 34) In some of the "secret" side deals, the payments were referred to as "factoring loans". (SAC P35) The Second Amended Complaint further alleges that the seemingly "without recourse" factoring agreements accounted for $ 47 million of the $ 61.5 million in revenue for the third and fourth quarters of 1999 and $ [*5] 64.4 million of the $ 113 million in revenue for the first and second quarters of 2000. (SAC P 36)

> 2   In the case of Chohung Bank, the second "secret" agreement was in the form of a pledge agreement. (SAC P 34)

Based on L&H Korea's financial reports, L&H Belgium paid Seo the additional $ 25 million under the earn-out provision. (SAC P 22) Additionally, the board of directors of L&H Belgium, in reliance upon the apparent financial condition of L&H Korea, approved a further capital contribution of $ 25 million to L&H Korea. A capital contribution of $ 6 million was made on or about March 15, 2000 and another $ 19 million on or about April 8, 2000. (SAC P 27)

The financial improprieties began to come to light in the late summer of 2000. (SAC P 42) The SAC contends that, when questioned, the defendant banks intentionally concealed the nature of the second set of agreements. (SAC P 47) Thereafter, in November of 2000, the defendant banks seized $ 95 million from the deposit accounts that L&H Korea maintained. [*6] (SAC P 48)

On November 29, 2000, L&H Belgium filed for bankruptcy under chapter 11 in the United States Bankruptcy Court for the District of Delaware. (SAC P 3) On April 2, 2004, a plan liquidating L&H Belgium became finalized and plaintiff in this action, Mr. Baena, was appointed litigation trustee by the Bankruptcy Court (the "Trustee"). (SAC P 4) It is in that capacity that he brings this action on behalf of L&H Belgium.

Case 1:13-cv-04895-PKC   Document 56   Filed 07/25/14   Page 20 of 34

Page 3
2006 U.S. Dist. LEXIS 74549, *6

I. The Doctrine of In Pari Delicto

Under Article III, Section 2, of the United States Constitution, courts are empowered to adjudicate only actual cases or controversies. To demonstrate sufficient constitutional standing under Article III, a plaintiff must demonstrate that they have suffered an injury in fact, that the injury is fairly traceable to the actions of the defendant and that it is likely that the injury will be redressed by a decision favorable to the plaintiff. See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

Defendants contend that claims or admissions made by the plaintiff in another litigation, which also arose from the collapse of L&H Belgium, demonstrate that L&H Belgium's [*7] injuries are not fairly traceable to the defendant banks. Baena v. KPMG, LLP, 389 F. Supp. 2d 112, 118-21 (D. Mass 2005), aff'd, 453 F.3d 1 (1st Cir. 2006). Defendants rely upon the doctrine of in pari delicto and assert that the active wrongdoing of L&H Belgium, in whose shoes the Trustee stands, bars all claims.

The doctrine of in pari delcito bars a plaintiff from bringing a claim where the plaintiff is complicit in the act for which he seeks redress. The doctrine is applied as both an equitable defense and a component of standing doctrine. Compare In re Bennett Funding Group, Inc, 336 F.3d 94, 99-102 (2d Cir. 2003) with BrandAid Marketing Corp. v. Biss, 462 F.3d 216, 2006 WL 2520292, *2 (2d Cir. 2006). Here, defendant asserts the doctrine of in pari delicto on a Rule 12(b)(1) motion, asserting that plaintiff's complicity in the fraud at L&H Belgium deprives the Trustee of standing. A bankruptcy trustee generally has standing to bring any claim that the corporation could have brought were it not bankrupt. 11 U.S.C. §§ 41 & 542. A trustee takes the place of the bankrupt [*8] corporation in any litigation, remaining subject to any defense, affirmative or jurisdictional, that the corporation would be subject to, including in pari delicto. See Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., Inc., 267 F.3d 340, 354 (3rd Cir. 2001). If it can be shown that, prior to commencement of the bankruptcy litigation, the debtor's management caused the misdeed for which the Trustee now seeks to recover -- and that misconduct can be imputed to the debtor under substantive applicable law -- the Trustee may be barred from bringing the claim. Id. at 358-60.

Whether conduct may be imputed to a debtor is a matter of state law and, therefore, application of in pari delicto is dependent on the substantive law of the forum applied by the court. See Official Comm. of the Unsecured Creditors of Color Tile, Inc., 322 F.3d 147, 157 (2d 2003) (look to Fifth Circuit and Texas law). On the motion before me, neither party has addressed whether Belgium or Korea have imported in pari delicto into their jurisprudence and absent the application of that doctrine, the Trustee is not deprived of standing.

Under the doctrine [*9] in par delicto as applied at common law, plaintiff must be "an active, voluntary participant in the unlawful activity that is the subject of the suit." Pinter v. Dahl, 486 U.S. 622, 636, 108 S. Ct. 2063, 100 L. Ed. 2d 658 (1988). Moreover, "[a]nother requirement for invocation of the doctrine of in pari delicto is that the plaintiff's wrongdoing be at least substantially equal to that of the defendant." BrandAid, 462 F.3d 216, 2006 WL 2520292, *2 (citing Bateman Eichler, Hill Richards, Inc. v. Berner, 472 U.S. 299, 310-11, 105 S. Ct. 2622, 86 L. Ed. 2d 215 (1985)). No discovery has been conducted in this action and the court cannot rationally allocate percentages of wrong at this early juncture.

It nevertheless remains a fundamental requirement of Article III standing that an injury to plaintiff be fairly traceable to defendant. Defendants correctly asserts that where a plaintiff's injury is self-inflicted, it cannot be said to be fairly traceable to defendant's conduct. Here, however, L&H Belgium's injury cannot be said to be self-inflicted. Defendants cite to allegations made by the plaintiff in Baena v. KPMG, LLP, which are said to demonstrate that L&H Belgium was aware of, and even complicit in, [*10] the fraud which eventually lead to its collapse. Defendants then assert that L&H Belgium's injuries in this present action are not fairly traceable to defendants' actions as they are self-inflicted injuries.

An examination of the complaint in Baena v. KPMG, LLP, does not support the conclusion that L&H Belgium was a participant in the fraud asserted here. In that suit, the plaintiff claimed that certain breaching managers of L&H Belgium, along with its accountants KPMG, committed fraud which ultimately injured the corporate entity of L&H Belgium. The breaching managers were, by that complaint's own admissions, the primary wrongdoers in the fraud and defendants asserted that plaintiff's claims should therefore be barred by the

doctrine of in pari delicto. In finding that the plaintiff's claimed were barred, the district court pointed to the critical fact that the fraud in that circumstance was committed to benefit L&H Belgium. 389 F. Supp. 2d at 119. Plaintiff there asserted that L&H Belgium was endeavoring, with the alleged assistance of KPMG, to inflate its revenues and increase the value of the corporation. Here, the Trustee asserts that defendants aided and [*11] abetted Seo in committing a fraud upon L&H Belgium. Rather than inflating the revenues of L&H Belgium and making the company look better, this alleged fraud is said to have harmed the corporation through unearned payouts and capital contributions. The district court in Baena v. KPMG, LLP, noted that plaintiff in that litigation "do[es] not argue that the Breaching Managers acted to loot the corporation, but rather to 'falsely and artificially inflate[] L&H's revenues and earnings'". Id. Here, if L&H Belgium's CFO was aware of the fraud in L&H Korea, as defendants' contend plaintiff admitted in Baena v. KPMG, LLP, he was effectively acting to loot the corporation rather than to benefit it. The $ 25 million post-closing payout to Seo did not serve to bolster the financial statements of L&H Belgium or otherwise benefit the corporation. Here, the allegedly faithless officers or directors of L&H Belgium were not seeking to benefit L&H Belgium; rather they were acting adversely to L&H Belgium. Therefore, unlike the plaintiff in the litigation against KPMG, L&H Belgium cannot be said to have caused its own injury and dismissal for lack of Article III standing or under Rule [*12] 12(b)(1) is not warranted.

## II. Forum Non Conveniens

Under the doctrine of forum non conveniens, a court may decline to exercise jurisdiction when litigation of the case in a foreign forum would "best serve the convenience of the parties and the ends of justice." Koster v. (American) Lumbermens Mut. Cas. Co., 330 U.S. 518, 527, 67 S. Ct. 828, 91 L. Ed. 1067 (1947). On a motion to dismiss for forum non conveniens, a court considers not only the allegations of the pleadings but all evidence submitted on the motion. See Car-gill Intern. S.A. v. M/T PAVEL DYBENKO, 991 F.2d 1012, 1019 (2d Cir. 1993). Additionally, "[t]he defendant bears the burden to establish clearly each factor . . . and to demonstrate that the balance tilts strongly in favor of the purported alternative forum." PT United Can Co., Ltd. v. Crown Cork & Seal Co., Inc., 138 F.3d 65, 74 (2d Cir. 1998).

Under Second Circuit precedent, district courts are instructed to undertake a tripartite analysis to determine whether a forum non conveniens dismissal is appropriate. Applying the analysis set forth in Iragorri v. United Techs. Corp., 274 F.3d 65 (2d Cir. 2001) [*13] and reaffirmed in Norex Petroleum Ltd. v. Access Industries, Inc., 416 F.3d 146 (2d Cir. 2005), the court first assesses the degree of deference given to a plaintiff's choice of forum. The court then must determine whether there is an adequate alternative forum for the resolution of plaintiff's claims. Lastly, the court must weigh and balance the relevant private and public interest factors to determine which forum is more appropriate and convenient. See Norex, 416 F.3d at 153 (citation omitted). While all factors are important in the analysis, the requirement of an alternative forum is dispositive. Id. at 157 ("To secure dismissal of an action on grounds of forum non conveniens, a movant must demonstrate the availability of an adequate alternative forum. If the movant fails to carry this burden, the forum non conveniens motion must be denied regardless of the degree of deference accorded plaintiff's forum choice.") (citing PT United Can, 138 F.3d at 73). As the court noted, it is for this reason that "courts sometimes begin their forum non conveniens analysis with this factor." Id.

Defendants point [*14] to South Korea as an adequate alternative forum in which this claim can be litigated. For a foreign forum to be considered adequate, the defendants must be amenable to service of process in the foreign jurisdiction and the forum must permit litigation of the subject matter of the dispute. [3] See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 n.22, 102 S. Ct. 252, 70 L. Ed. 2d 419 (1981). The Second Circuit has held that a forum is unavailable for purposes of forum non conveniens when it would be impossible for a plaintiff to proceed with a suit there due to the availability of a meritorious statute of limitations defense. See Bank of Credit and Commerce Int'l (Overseas) Ltd. v. State Bank of Pakistan ("BCCI"), 273 F.3d 241, 246 (2nd Cir. 2001) ("It follows that an adequate forum does not exist if a statute of limitations bars the bringing of the case in that forum."); see also Norex, 416 F.3d at 159. Where there is no alternative forum, "the *forum non conveniens* analysis does not concern itself with the reason why an alternative foreign forum is no longer available; its singular concern is the fact of present availability". Norex, 416 F.3d at 159 [*15] (emphasis added). Here, both parties agree that if this case were dismissed in favor of a South Korean forum, the Korean

Case 1:13-cv-04895-PKC   Document 56   Filed 07/25/14   Page 22 of 34

Page 5
2006 U.S. Dist. LEXIS 74549, *15

courts would apply the Korean statute of limitations and the case would be dismissed as time-barred. (Def.'s mem. at 27, Plaintiff Mem. in Opp. at 13) The movants have failed to demonstrate the existence of an adequate alternative forum in which this claim may be litigated and, therefore, a dismissal on forum non conveniens ground is improper.

> 3  Plaintiff states that there never was, and is not currently, an intent to bring this case in Belgium. (Plaintiff's Mem. in Opp. at 32 n.4) There has been no showing that defendants are or would be subject to suit in Belgium.

III. Statute of Limitations

As noted, plaintiff concedes that if the Korean statute of limitations is applied, all of their claims are barred as this action was filed more than three years after L&H Belgium became aware of the inaccurate earnings reports from L&H Korea. (12/21/06 Tr. at 11, 21; Pl. Mem. at 13). [*16] The applicable statute of limitations under South Korean law to all of plaintiff's claims is three years, running from the date that the injured party becomes aware of both the wrongdoer's identity and of the damage that has been suffered, or ten years after the commission of the tort, whichever is shorter. (See Yune Decl. P 59) As of August 8, 2000, the Wall Street Journal published a report questioning L&H Korea's explosive financial growth and suggesting financial improprieties. (SAC P 43) L&H Belgium filed for bankruptcy on November 29, 2000, and the lawsuit was filed on August 5, 2006, more than four and half years later.

Defendants contends that, under New York's borrowing statute, CPLR § 202, this court should look to South Korea law as the place where the claims accrued and find them time-barred. Alternatively, it argues that if they accrued in Belgium, then Belgium would, in turn, look to South Korea law under its choice of law principles. Finally, it argues that the Korean statute of limitation ought to be applied under the "internal affairs" doctrine.

A federal court sitting in diversity must apply the laws of the forum in which it sits. [4] Klaxon Co. v. Stentor Co., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). [*17] Thus, a federal court sitting in New York will apply the New York's statute of limitations. See Guaranty Trust Co. v. York, 326 U.S. 99, 109-11, 65 S. Ct. 1464, 89 L. Ed. 2079 (1945). New York's borrowing statute

applies if the cause of action accrues outside of New York to a non-New York resident. CPLR § 202. See Stuart v. American Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998). Under the borrowing statute, the shorter of either New York's statute of limitations or the statute of limitations, along with any relevant tolling provisions, of the jurisdiction in which the cause of action accrued is applied to a claim brought by a non-resident. See Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 710 (2d Cir. 2002); see also Antone v. Gen. Motors Corp., 64 N.Y.2d 20, 473 N.E.2d 742, 484 N.Y.S.2d 514 (1984). Here, defendants do not contend that the claims would be untimely under New York law. [5] Further, they do not dispute that plaintiff is a non-New York resident or that the cause of action accrued outside of New York. The borrowing statute requires this court look to the statute of limitations in the place where the cause of action accrued either Belgium or South Korea.

> 4  In addition to diversity of citizenship, subject matter jurisdiction is also invoked under 28 U.S.C. §§ 157 and 1334, presumably on the theory that the claims are related to a bankruptcy proceeding.

[*18]

> 5  Because timeliness under New York law has not been challenged, I do not address it. Cf. Bartang Bank and Trust Co. v. Caiola, 2006 U.S. Dist. LEXIS 67716, 2006 WL 2708453 at *5 (S.D.N.Y. Sept. 18, 2006).

In considering where a cause of action accrues under CPLR § 202, the New York Court of Appeals has concluded that the traditional place of injury test applies. Global Financial Corp. v. Triarc Corp., 93 N.Y.2d 525, 529, 715 N.E.2d 482, 693 N.Y.S.2d 479 (1999) ("[W]e have consistently employed the traditional definition of accrual -- a cause of action accrues at the time and in the place of the injury -- in tort cases involving interpretation of CPLR 202."). If the injured party is a corporation, then the place of residence for the purposes of CPLR § 202 is traditionally the state of incorporation or the corporation's principal place of business. Compare American Lumbermens Mut'l Cas. Co. v. Cochrane, 129 N.Y.S.2d 489, 491 (N.Y.Sup.Ct 1954), aff'd 284 A.D. 884, 134 N.Y.S.2d 473 (1st Dept. 1954), aff'd 309 N.Y. 1017, 133 N.E.2d 461 (1956) with Investigative Group, Inc. v. Brooke Group Ltd., Inc., 1997 U.S. Dist. LEXIS 18513, 1997 WL 727484, [*19] *3 (S.D.N.Y. Nov 21, 1997). For purposes of this analysis, L&H Belgium is both

incorporated in and has its principal place of business in Belgium. (SAC P 12) When, as in this case, an "alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Global Financial, 93 N.Y.2d at 529; see also Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A, 2001 U.S. Dist. LEXIS 5880, 2001 WL 492363, *4 (S.D.N.Y May 9, 2001) (holding that a tort resulting in purely economic injury accrued at respective places of residence); Proforma Partners, L.P. v. Skadden Arps Slate Meagher & Flom, 280 A.D.2d 303, 720 N.Y.S.2d 139 (1st Dept. 2001)(same). This rule is applicable both to common law fraud cases and to those alleging a breach of fiduciary duty. See, e.g., Gordon & Co. v. Ross, 63 F.Supp.2d 405, 408-09 (S.D.N.Y. 1999); Hughes v. LaSalle Bank, N.A., 419 F.Supp.2d 605, 614 (S.D.N.Y. 2006). There is, however, a limited exception to the general place of injury rule. Where a plaintiff "maintain[s] [a] separate financial base" and where the impact of the financial loss it felt at [*20] that location, it may constitute an alternative place of injury. Global Financial, 93 N.Y.2d at 530 (examining and summarizing Lang v. Paine, Webber, Jackson & Curtis, Inc., 582 F. Supp. 1421 (S.D.N.Y. 1984)). The Lang exception, however, is applied only in the "extremely rare" case where the party has offered "unusual circumstances" evincing that the economic injury occurred at a place other than the plaintiff's residence. See Gorlin v. Bond Richman & Co., 706 F.Supp. 236, 240 n.8 (S.D.N.Y. 1989); accord Block v. First Blood Assocs., 988 F.2d 344, 349 (2d Cir. 1993).

Here, defendants contend that the Lang exception is applicable and that this court ought to look to South Korea's statute of limitations since that is where the plaintiff's claims accrued. The injury to L&H Belgium is purely economic and so to determine the location of where plaintiff's claims accrued, the court must answer the sensible question asked by Judge Stewart, "who became poorer and where did they become poorer?" Appel v. Kidder Peabody & Co. Inc., 628 F.Supp. 153, 156 (S.D.N.Y. 1986)(citation omitted). Defendant contends [*21] that because L&H Korea was acquired by L&H Belgium and L&H Belgium eventually lost funds due to the collapse of L&H Korea, plaintiff's claims fall within the Lang exception and accrued in South Korea. Unlike the plaintiffs in Lang, there was no effort on behalf of L&H Belgium to establish L&H Korea as a separate financial base. At the time of the alleged fraud, L&H Korea was a wholly-owned subsidiary of L&H

Belgium. Although L&H Belgium engaged in activities in South Korea and South Korea is the site of events underlying all of plaintiff's causes of action, the economic impact of the injury was ultimately felt by L&H Belgium in Belgium where the company resided. The capital contributions to L&H Korea and the payment to Seo pursuant to the earn-out clause came from the corporate treasury of L&H Belgium in Belgium. Additionally, these payments were approved by the board of directors of L&H Belgium and the direct impact of the alleged events was to cause financial harm to L&H Belgium. I conclude that Belgium was the location of economic injury and, therefore, the place of accrual for purposes of the borrowing statute.

I note that it is irrelevant for purposes of applying CPLR [*22] § 202 that the defendants may not be subject to jurisdiction in Belgium. The New York Court of Appeals has interpreted CPLR § 202 as to permit the borrowing of a foreign jurisdiction's statute of limitations, even where the defendant would not be subject to jurisdiction in the foreign court. Insurance Co. of North America v. ABB Power Generation, Inc, 91 N.Y.2d 180, 186, 690 N.E.2d 1249, 668 N.Y.S.2d 143 (1997) ("The purposes underlying the borrowing statute do not require that amenability to suit be demonstrated before an action can be said to accrue in a particular jurisdiction.").

The Belgian statute of limitations is five years and begins to run the day after the plaintiff discovers the damage and the identity of the person who caused the damage. (See De Wulf Decl. at 8(b)) Defendants do not contend that plaintiff's claims are untimely if the Belgian statute of limitations is applied. (Decl. Hans De Wulf P 12) Defendants assert that a Belgian court would apply Belgian choice of laws analysis which would lead, in turn, to the application of the Korean statute of limitations. [6] New York has rejected incorporation of a foreign jurisdiction's choice of law analysis under CPLR § 202, instead [*23] concluding that "CPLR 202 is to be applied as written, without recourse to a conflict of laws analysis." Ledwith v. Sears, Roebuck and Co., Inc., 231 A.D.2d 17, 24, 660 N.Y.S.2d 402 (1st Dept. 1997). In Rescildo v. R.H. Macy's, 187 A.D.2d 112, 116, 594 N.Y.S.2d 139 (1st Dept. 1993), plaintiffs sought to have the court apply the borrowing statute so as to "borrow a foreign jurisdiction's choice of law rules", ultimately requiring a reversion back to New York law, a process known as renvoi. The court declined to apply the foreign state's choice of laws analysis, even though a court sitting

in the foreign state would have done so had it been confronted with the plaintiff's claim. Id. at 117.

6   In a battle of dueling experts, both parties assert opposite contentions as to whether the Belgian court would or would not look to Korean law. Because I conclude that CPLR § 202 forecloses the use of Belgian choice of law principles, it is not necessary to reach this issue.

I conclude that plaintiff's [*24] claims accrued in Belgium. The claims are timely under the laws of New York and the laws of Belgium, the jurisdiction whose law New York would borrow. Whether a court sitting in Belgium would look to another jurisdiction's law to determine the statute of limitations is not controlling under CPLR § 202. No New York court has accepted the "internal affairs" doctrine as an exception to traditional statute of limitation principles. Defendants' motion to dismiss on the grounds of statute of limitations is denied.

## IV. Lack of the Particularity Required By Rule 9(b)

While the parties vigorously contest whether Belgian or Korean substantive law applies to plaintiff's claims, it is uncontested that under either jurisdiction's law the plaintiff would be required to demonstrate fraud, whether as an independent tort or a component of the proof of liability. While Belgian law does not recognize a cause of action for aiding and abetting or breach of fiduciary duty, it does recognize an independent tort of fraud requiring the showing of fault, intent, causation and damages. (See Decl. De Wulf PP 8, 15-17) Under Korean law, a plaintiff must establish: (1) a tort by the principal tortfeasor; [*25] (2) actions that aided or abetted the principal tortfeasor's conduct; (3) intent on the part of the defendant to aid and abet the principal's conduct or that the defendants were negligent in aiding and abetting the principal tortfeasor's acts; (4) causation; and (5) damages. (Yune Decl. PP 49-54)

Under Rule 9(b), "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The heightened pleading standard of Rule 9(b) has also been held to apply equally to claims of aiding and abetting fraud. See Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000). The court need not decide which jurisdiction's law would govern the substantive claims as both Belgian and Korean law would require some proof of fraud to permit recovery and Rule 9(b) would apply. Where an allegation is factually rooted in fraud, Rule 9(b) will apply. See Rombach v. Chang, 355 F.3d 164, 171 (2d Cir. 2004)(noting that the wording of Rule 9(b) "is cast in terms of the conduct alleged, and is not limited to allegations styled or denominated as fraud or expressed in terms of the constituent elements of a fraud cause of action"). [*26] While Rule 9(b) does provide that conditions of mind may be generally averred and therefore "the requisite intent of the alleged [perpetrator of the fraud] need not be alleged with great specificity", Chill v. General Elec. Co., 101 F.3d 263, 267 (2d Cir. 1996), it still must be adequately alleged.

Here, plaintiff has adequately alleged the fraud committed by Seo. But he has failed to plead, other than in a conclusory fashion, the manner in which the banks aided the fraud. Plaintiff has alleged that there were two sets of agreements between the defendant banks and Seo, one of which was not known to L&H Belgium. The plaintiff has not alleged that it is unlawful for the parties to have entered into these two sets of agreements. Plaintiff simply leaves it as a matter of inference from the presence of two sets that the banks were complicit in Mr. Seo's use of the one set of agreements in the preparation of false financial statements which were given to L&H Belgium.

In a conclusory manner, the Second Amended Complaint alleges that, after Seo's fraud came to light, each and every one of the defendant banks concealed the existence of the so-called secret side agreements. [*27] (SAC P 49) It is unclear whether the banks "concealed" by refusing to communicate with counsel conducting the investigation or whether each and every bank affirmatively and falsely represented that the factoring arrangement was "without recourse." Because of the lack of particularity of this allegation, I am unable to tell whether it fairly can be read to relate to the actions of the defendant banks at an earlier point in time. The Second Amended Complaint lacks the particularity required by Rule 9(b).

In his amended pleading, the plaintiff is free to renounce a fraud based theory and proceed solely under KCA Article 760. Under KCA Article 760, the plaintiff would need to prove the fraud committed by Mr. Seo as the underlying tort but the claim against the defendant banks will not "sound in fraud" but in the banks' own negligence.

As presently drafted, plaintiff's claims sound, at least

in part, in fraud but do not allege the actions of the defendant banks with the particularity required by Rule 9(b).

CONCLUSION

Defendants' motion to dismiss under Rule 9(b), Fed.R.Civ.P., is GRANTED with leave to replead within twenty (20) days. Defendants' [*28] motion to dismiss the Second Amended Complaint on all other grounds is DENIED.

SO ORDERED.

P. Kevin Castel

United States District Judge

Dated: New York, New York

October 11, 2006

DeRuiter v. Vaules

05-CV-1054

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
NEW YORK

2005 U.S. Dist. LEXIS 44405

October 18, 2005, Decided

OPINION

DECISION & ORDER

I. Introduction & Background

Plaintiff Michael A. DeRuiter, Jr. ("Administrator"), as Administrator of the estate of Michael A. DeRuiter, Sr. ("Decedent"), has sued David M. Vaules, Matthew E. Marvel, Robert B. Johnson, Michael J. Hodgman, Charles B. Howarth, [*2] Rosemary A. Thomas, David L. Sommerville, Josephine M. Ng, and the Mary Immogene Bassett Hospital d/b/a Bassett Healthcare ("Defendants") for the wrongful death of Decedent, seeking $ 100,000. Administrator is a resident of Virginia, while Decedent was a resident of New York. Defendants are all New York residents.

Defendants moved to dismiss the complaint for lack of subject matter jurisdiction pursuant to Fed R. Civ. P. 12(b)(1).

II. Discussion

The issue presented by Defendants' motion is whether the residence of the administrator of a decedent's estate is used for diversity purposes, or whether the administrator assumes the residence of the decedent. Defendants claim that this Court does not have subject matter jurisdiction in this matter. For a federal court to have subject matter jurisdiction, there must either be a federal question or diversity of citizenship. Since Administrator is only arguing diversity of citizenship, he must show that the amount in controversy is over $ 75,000 and the action is between: "1) citizens of different States; 2) citizens of a State and citizens or subjects of a foreign state; 3) citizens of different [*3] States and in which citizens or subjects of a foreign state are additional parties; and 4) a foreign state . . . as plaintiff and citizens of a State or different States." 28 U.S.C. § 1332(a).

Administrator claims that his residence, not Decedent's, should be examined for diversity purposes. However, the United States Code states otherwise: "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ." 28 U.S.C. § 1332(c)(2). Therefore, Administrator assumes the residence of Decedent. *See Truck-A-Tune, Inc. v. Re,* 23 F.3d 60, 62 (2d Cir. 1994) (holding that "representatives of the [estate] are deemed to have the citizenship of the decedent"). Thus, because Defendants and Decedent are all residents of New York, diversity is destroyed.

III. Conclusion

Because this Court does not have subject matter jurisdiction in this matter, Defendants' motion is **GRANTED** and the Administrator's complaint is **DISMISSED.** The Clerk of the Court shall close the file in this matter.

Dated: October 18, 2005

**Thomas J. McAvoy**

**Senior, [*4]  U.S. District Judge**

**Norex Petroleum Ltd. v Blavatnik**

**No. 121**

**COURT OF APPEALS OF NEW YORK**

**2014 N.Y. LEXIS 1446; 2014 NY Slip Op 4802**

**June 26, 2014, Decided**

**NOTICE:**

THE LEXIS PAGINATION OF THIS DOCUMENT IS SUBJECT TO CHANGE PENDING THE RELEASE OF THE FINAL PUBLISHED VERSION. THIS OPINION IS UNCORRECTED AND SUBJECT TO REVISION BEFORE PUBLICATION IN THE OFFICIAL REPORTS.

**DISPOSITION:** [*1] Order reversed, with costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

**OPINION**

READ, J.:

This dramatic and long-running contest over control of a lucrative oil field in Western Siberia reduces at present to an open question of New York civil procedure involving the interplay of CPLR 202, New York's "borrowing" statute, and CPLR 205 (a), New York's "savings" statute. When a cause of action accrues outside New York and the plaintiff is a nonresident, section 202 "borrows" the statute of limitations of the jurisdiction where the claim [**2] arose, if shorter than New York's, to measure the lawsuit's timeliness[1]. New York's "savings" statute, section 205 (a), allows a plaintiff to refile claims within six months of a timely prior action's termination for reasons other than the merits or a plaintiff's unwillingness to prosecute the claims in a diligent manner.[2]

1   CPLR 202 states in its entirety that

"[a]n action [*2] based upon a cause of action accruing without the state cannot be

commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply" (CPLR 202).

2   CPLR 205 (a) states, as relevant, that

"[i]f an action is timely commenced and is terminated in any other manner than by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits, the plaintiff . . . may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period" (CPLR 205 [a]).

This appeal calls upon us to decide whether a nonresident plaintiff who filed a timely action in a New York federal court may refile claims arising from the [*3] same transaction in state court within six months of the federal action's non-merits termination, even though the suit would be untimely in the out-of-state jurisdiction where the claims accrued. We hold that such a lawsuit is not time-barred, and therefore reverse the Appellate Division.[3]

3   We decide only that Norex's state court action, refiled pursuant to CPLR 205 (a), is not time-barred by CPLR 202; we do not address and express no opinion about whether Norex's lawsuit

fulfills other requirements of section 205 (a). For purposes of discussion in this opinion, we simply assume that, within the meaning of section 205 (a), Norex's federal action was not terminated on the merits, and Norex's state court action alleges claims "upon the same transaction or occurrence" as its federal predecessor. We appreciate that defendants contend that the termination of Norex's federal action constituted "a final judgment upon the merits" within the meaning of CPLR 205 (a). Upon remittal, Supreme Court must resolve this and any other issues raised by defendants in their motions to dismiss and not reached because the lawsuit was dismissed as untimely.

I.

On February 26, 2002, plaintiff Norex Petroleum [*4] Limited (Norex), a resident of Alberta, Canada, commenced an action against defendants Leonard Blavatnik, Victor [**3] Vekselberg, Access Industries, Inc., Renova, Inc. and Tyumen Oil Company, among others, in the United States District Court for the Southern District of New York, asserting various claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) (18 USC §§ 1961-1968). Stripped to its basics, the complaint alleges that defendants wrested away Norex's majority interest in a Russian oil company with significant proven reserves and, concomitantly, deprived Norex of hundreds of millions of dollars in profits and dividends as part of a massive scheme to take control of Russian oil assets.

Defendants moved to dismiss Norex's complaint on various grounds, including forum non conveniens. On February 18, 2004, the judge granted the motion; she was persuaded that the relevant factors strongly favored a Russian forum (*Norex Petroleum Ltd. v Access Indus., Inc.*, 304 F Supp 3d 570 [SD NY 2004]). Norex appealed, and by decision dated July 21, 2005, the Second Circuit reversed (*id.*, 416 F3d 146 [2d Cir 2005]). In so doing, the court remarked that "the district court did not ascribe [*5] any forum-shopping motives to Norex's choice of a New York forum," and that "the totality of circumstances suggests that Norex's decision to sue in New York was informed by genuine convenience" (*id.* at 155, 157)[4]. Norex amended its complaint on December 21, 2005 to add BP LLP (BP) as a defendant, and to assert claims for tortious conduct and unjust enrichment under Russian

law against all defendants except BP.

4      Defendants petitioned for certiorari on February 17, 2006 (2006 WL 431070), which the United State Supreme Court denied on May 30, 2006 (*Tyumen Oil Co. v Norex Petroleum Ltd.*, 547 U.S. 1175, 126 S. Ct. 2320, 164 L. Ed. 2d 860 [2006]).

Defendants then moved to dismiss pursuant to Federal Rules of Civil Procedure rule 12 (b) (1) for lack of subject matter jurisdiction. On September 24, 2007, the district court granted the motion (*id.*, 540 F Supp 2d 438 [SD NY 2007]). The judge concluded that neither of the tests commonly used to analyze whether a federal statute has extraterritorial effect -- the "conduct" test and the "effects" test -- supported subject matter jurisdiction in a case involving the extraterritorial application of RICO. Since RICO supplied the sole basis for federal jurisdiction, the district court declined [*6] to exercise supplemental jurisdiction over Norex's claims under Russian law (*id.* at 449; *see* 28 USC § 1367 [c] [3]], discussed *infra*, n 6)). Norex again appealed to the Second Circuit.

While the appeal was pending, the United States Supreme Court decided *Morrison v Natl. Australia Bank, Ltd.* (561 U.S. 247, 130 S. Ct. 2869, 177 L. Ed. 2d 535 [2010]), which held that federal securities fraud statutes generally do not apply extraterritorially. The Court abandoned the "conduct and effects" test, and instead adopted a bright-line rule that a federal statute lacks extraterritorial reach absent a clear Congressional expression to the contrary. On September 28, 2010, the Second Circuit affirmed the district court's dismissal of Norex's complaint.

In light of *Morrison*, the Second Circuit held that RICO's extraterritorial application was "properly considered as a question of whether [Norex's] complaint states a cause of action for which a United States federal court can provide relief, not as a question of whether the court possesses subject matter jurisdiction to hear the claim" (*Norex Petroleum Ltd.*, 631 F3d 29, 31 [2d Cir 2010], *superseding earlier opinion affg on other grounds* 622 F3d 148 [2d Cir 2010]; *see Morrison*, 561 U.S. at 253-254). [*7] Accordingly, the court determined that the district court had erred in dismissing Norex's complaint for lack of subject matter jurisdiction, but concluded that dismissal was nonetheless warranted under Federal Rules of Procedure rule 12 (b) (6) for

failure to state a claim upon which relief may be given. The Second Circuit declined to revisit its previous holding that RICO is silent as to any extraterritorial application, and added that, in any event, Norex's arguments were foreclosed by *Morrison* or otherwise unavailing.

On October 20, 2010, Norex filed a petition for rehearing en banc, and on November 22, 2010, the United States Department of Justice filed an amicus brief in support of a limited rehearing en banc. The Justice Department's primary request, though, was for the Second Circuit to make clear that its ruling in Norex's lawsuit did not apply when the government sought to enforce RICO either civilly or criminally. On December 8, 2010, the court issued an amended decision, which included a sentence to clarify that its opinion did not speak to government enforcement (*see Norex Petroleum Ltd*., 631 F3d at 33).

On January 18, 2011, the Second Circuit denied Norex's request for a  [*8] rehearing en banc. Norex then moved for a stay of the issuance of the court's mandate, "to avoid potentially triggering the running of relevant 'savings action statutes'" while it pursued certiorari in the United States Supreme Court; Norex identified CPLR 205 (a) as such potential "savings" statute. The court granted the motion on February 1, 2011.[5]

> 5   On April 18, 2011, Norex filed its certiorari petition (79 USLW 3636), which was dismissed upon the parties' stipulation on June 29, 2011. The Second Circuit eventually issued its mandate on July 26, 2011.

On March 7, 2011, Norex brought this action in Supreme Court. In a first amended complaint filed on June 23, 2011, Norex asserted eight claims against all defendants; namely, tortious interference with contract; tortious interference with prospective business relations; conversion; breach of fiduciary duties; unjust enrichment; action for money had and received; unjust enrichment in violation of Russian law; and intentional tortious conduct/minority oppression in violation of Russian law.

Defendants moved to dismiss the complaint on multiple grounds, including that Norex's action was untimely under CPLR 202. As a resident of Alberta, [*9] Canada, alleging purely economic injuries, Norex's injuries accrued in Alberta (*see Global Fin, Corp. v Triarc Corp*., 93  [**4]  NY2d 525, 529, 715 N.E.2d 482,

693 N.Y.S.2d 479 [1999] [when the claimed injury is economic, the cause of action typically accrues "where the plaintiff resides and sustains the economic impact of the loss"], *citing Matter of Smith Barney, Harris, Upham & Co. v Luckie*, 85 NY2d 193, 207, 647 N.E.2d 1308, 623 N.Y.S.2d 800 [1995], *cert denied sub nom. Manhard v Merrill Lynch, Pierce, Fenner & Smith*, 516 U.S. 811, 116 S. Ct. 59, 133 L. Ed. 2d 23 [1995]). Alberta law provides a two-year statute of limitations for the torts alleged by Norex, and does not have a "savings" statute akin to CPLR 205 (a).

By decision and order dated June 13, 2012, Supreme Court consolidated defendants' various motions, and dismissed Norex's complaint as time-barred. Reasoning that CPLR 202 required her to apply Alberta's shorter limitations period to determine if Norex's state court action was timely, the judge ruled that Norex's claims against the non-BP defendants expired at the latest on February 26, 2004 (i.e., two years after Norex filed its federal court action), and its claims against BP expired at the latest on December 21, 2007 (i.e., two years after Norex amended its federal complaint  [*10] to add BP as a defendant).

Supreme Court also rejected Norex's assertion that its state law claims were tolled under 28 USC § 1367 (d), which provides a plaintiff with a 30-day grace period to refile in a state court after a non-merits dismissal of supplemental claims "unless State law provides for a longer tolling period."[6] Supreme Court held that Norex did not enjoy the benefit of 28 USC § 1367 because CPLR 205 (a) provides for a longer tolling period. But the judge also concluded that CPLR 205 (a) did not, in fact, permit Norex's state court action against defendants since, as she had already made clear, the lawsuit was untimely by virtue of CPLR 202. Norex appealed.

> 6   Subsection (d) of 28 USC § 1367 states in its entirety that
>
> "[t]he period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period" (28 USC § 1367 [d]).

Subsection (a) vests the district courts with supplemental jurisdiction [*11] over all non-federal claims in the action which are part of the underlying case or controversy (28 USC § 1367 [a]). Subdivision (c) enumerates the grounds upon which the district court may, in its discretion, decline to exercise supplemental jurisdiction, including that "the district court has dismissed all claims over which it has original jurisdiction" (28 USC § 1367 [c] [3]), as happened here.

The Appellate Division unanimously affirmed (105 AD3d 659, 963 N.Y.S.2d 644 [1st Dept 2013]). The court first agreed with Supreme Court that Norex's state court action was untimely under Alberta law and therefore, by operation of CPLR 202, was also time-barred in New York. Further, the court adopted Supreme Court's analysis with regard to why Norex's state and Russian [**5] law claims were untimely under 28 USC § 1367 (d). The Appellate Division added in dictum that, even if Norex's lawsuit had been timely under section 1367 (d), the relation-back doctrine would not have authorized the six state law claims that Norex alleged in its complaint, and, further, that Norex's federal lawsuit was dismissed on the merits for purposes of section 1367 (d). Norex sought leave to appeal, which we granted on September 12, 2013 [*12] (21 NY3d 865, 996 N.E.2d 918, 974 N.Y.S.2d 37 [2013]).

II.

Norex contends that CPLR 205 (a) permits its "new" state court action because its initial, or "prior," federal court action was timely under CPLR 202. Defendants, by contrast, argue that Norex may not benefit from section 205 (a) because its "new" action was untimely under the laws of Alberta, which has no savings law, and so is barred by section 202. Stated another way, Norex would have the courts apply section 202 only once, to determine whether its initial action would have been timely in Alberta when filed in federal court in New York, while defendants would ask us to apply section 202 a second time, to assess whether Norex's follow-on action was timely in Alberta when commenced in state court.

*Global Financial*

Norex claims that in *Global Financial* we "implicitly rejected" the lower courts' and defendants' interpretation of how CPLR 202 and CPLR 205 (a) fit together. In

*Global Financial*, the nonresident plaintiff brought an action in federal district court against the defendant to recover commissions and fees it claimed to be owed. The plaintiff filed its complaint just shy of six years after the defendant refused a demand for payment. Since both parties were [*13] Delaware corporations, the district court dismissed the complaint for lack of subject matter jurisdiction. Three months later, within CPLR 205 (a)'s six-month savings period, the plaintiff commenced a substantially similar suit in Supreme Court.

The defendant sought dismissal on the ground that the plaintiff's state court action was time-barred under CPLR 202 because its federal action was not brought within the time limitations imposed by the laws of either Delaware, where the plaintiff was incorporated, or Pennsylvania, where the plaintiff asserted that its principal place of business was located. The plaintiff countered that its claims were timely because they accrued in New York, where the parties' contract was negotiated, executed, substantially performed and allegedly breached. At the time the federal lawsuit was brought, the claims would have been time-barred in Delaware (*see* Del Code Annot tit 10, § 8106 [three-year limitations period for actions on a promise]; Del Code Annot tit 10, § 8111 [one-year limitations period for actions on services]) and Pennsylvania (*see* 42 Pa Cons Stat Annot § 5525 [four-year limitations period for contract actions]), but not in New York (*see* CPLR 213 [2] [*14] [six-year statute of limitations]). Supreme Court agreed with the defendant and dismissed the complaint, and the Appellate Division unanimously affirmed.

We held that "[w]hen an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss" (*Global* [**6] *Financial*, 93 NY2d at 529, *citing Smith Barney*, 85 NY2d at 207), and here, the claims were time-barred "whether one look[ed] to . . . Delaware or Pennsylvania" (*Global Financial*, 93 NY2d at 530). Consequently, the plaintiff's federal lawsuit -- the "prior" action within the meaning of CPLR 205 (a) -- was untimely, necessarily rendering the "new" action in state court untimely as well.

Thus, in *Global Financial* we decided where a nonresident's contract claims accrue for purposes of CPLR 202, not whether a new action commenced pursuant to CPLR 205 (a) may be time-barred by CPLR

202 even though the prior action from which the new action flows was timely. In short, the defendant in *Global Financial* did not advance the argument pressed by defendants here. Indeed, citing CPLR 205 we observed that the parties "*do not dispute* that [the state court] action is timely if the [*15] Federal action was timely when commenced" (*id*. at 527 [emphasis added]). We had no occasion to consider, much less decide, whether the parties were correct.

The defendant in *Global Financial* alleged on appeal that the plaintiff's principal place of business was Florida, not Pennsylvania. We remarked in a footnote that it was "unnecessary for us to choose between these two States, as plaintiff's claims are time-barred under Florida's Statute of Limitations as well as Pennsylvania's (*see* Fla Stat Annot § 95.11 [2] [five-year limitations period for breach of contract])" (*id*. at 527, n 1). This footnote and our solitary reference to CPLR 205 in *Global Financial* provoked a lively debate between Norex and defendants.

Norex asserts that because Florida, like Alberta, does not have a savings statute, it is "[s]ignificant" that we "did not deem it relevant whether the laws of other states, whose statutes of limitations might be borrowed, had savings statutes different from CPLR 205." Instead, we "simply applied CPLR 205 to determine that the relevant date for the statute of limitations analysis under CPLR 202 was the filing of the original Federal complaint." As a result, according to Norex, "*Global* [*16] *Financial* plainly stands for the proposition that CPLR 205 (a) is available to non-resident plaintiffs, like Global Financial and Norex, whose claims accrue outside New York, *even if* the state laws 'borrowed' under CPLR 202 for purposes of determining the limitations period (Florida in the case of *Global Financial*, Alberta in this case) do not have a savings statute at all."

Defendants respond that our citation to CPLR 205 in *Global Financial* was unimportant because "the laws of the foreign jurisdictions referred to under CPLR § 202 (Pennsylvania and Delaware) were virtually identical to CPLR § 205 (a)" (*citing* Del Code Annot tit 10, § 8118 [one-year savings statute] and 42 Pa Cons Stat Annot § 5535 [one-year savings statute]). As a result, defendants continue, "in the absence of any conflict identified by the parties, [the Court] cited to CPLR § 205 (a) -- as opposed to the similar laws of Pennsylvania or Delaware -- relating to plaintiff's right to re-file, and . . . simply noted (without having to rule on [**7] the issue) that '[t]he

parties do not dispute that this action is timely if the Federal action was timely when commenced'" (*quoting Global Financial*, 93 NY2d at 527). Defendants [*17] therefore suggest that the parties and the Court focused on the original filing date in *Global Financial* merely because the plaintiff's claim was going to be "saved" on the refiling date, if originally timely filed, no matter which state's law applied. As summed up by defendants, "borrowing all of Delaware, Pennsylvania, *or* Florida law -- i.e., limitations *and* tolling provisions -- would have been outcome-neutral under CPLR § 202."

Norex points out that defendants' argument breaks down if Florida, like Alberta, has no savings statute. But nothing in our opinion in *Global Financial* indicates that we ever took into account the savings statutes (or lack thereof) in any of the relevant foreign states. And both parties read far too much into our reference to CPLR 205 in a case where, as previously noted, the parties agreed, for whatever reason, that the state court action was not time-barred by section 202 so long as the prior federal court action had been timely filed.

*Smith Barney*

Defendants attach great importance to our repeated admonition that when New York borrows a statute of limitations, the borrowed limitations period comes fully encumbered with all the foreign jurisdiction's tolling [*18] rules. In *Smith Barney*, the case principally relied on by defendants, the common issue in two appeals was whether the arbitrators or the courts should decide the timeliness of disputes that the customers sought to arbitrate with their securities brokers. The arbitration agreements contained New York choice-of-law provisions and were governed by the Federal Arbitration Act. The Appellate Division concluded that the question of timeliness was for the arbitrator to decide. We reversed and remitted each case for the Appellate Division to resolve the parties' statute of limitations arguments, including "applicability of the borrowing statute, relevant accrual dates, tolls and extensions" (*Smith Barney*, 85 NY2d at 207).

When discussing CPLR 202, we observed that "[i]n borrowing the foreign statute, '[a]ll the extensions and tolls applied in the foreign state must be imported with the foreign statutory period, so that the *entire* foreign statute of limitations . . . applie[s], and not merely its period'" (*id*., *quoting* McLaughlin, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B,

CPLR C202:3, at 109]). This is so because the legislature enacted section 202 primarily to prevent forum [*19] shopping; i.e., to make sure that nonresidents do not select a New York forum and burden New York's state and federal courts when, and perhaps precisely because, their lawsuits are time-barred by the applicable laws of the foreign states where the causes of action accrued (*see Insurance Co. of N. Am. v ABB Power Generation*, 91 NY2d 180, 187-188, 690 N.E.2d 1249, 668 N.Y.S.2d 143 [1997]).

As defendants emphasize, many New York cases recite and apply the general rule that, when borrowing foreign law pursuant to CPLR 202, foreign tolls and extensions must be imported, too (*see e.g. Martin v Dierck Equip. Co.*, 43 NY2d 583, 374 N.E.2d 97, 403 N.Y.S.2d 185 [1978] [action for personal injuries brought in New York more than two years after the plaintiff's claims accrued in Virginia [**8] was time-barred under the borrowing statute because Virginia would apply a two-year statute of limitations without any possible tolls]; *Childs v Brandon*, 60 NY2d 927, 929, 459 N.E.2d 149, 471 N.Y.S.2d 40 [1983] [in borrowing a foreign jurisdiction's statute of limitations, "its tolling statute is also borrowed"]; *Antone v General Motors Corp., Buick Motor Div.*, 64 NY2d 20, 31, 473 N.E.2d 742, 484 N.Y.S.2d 514 [1984] ["in [*20] 'borrowing' a Statute of Limitations of another State, a New York court will also 'borrow' the other State's rules as to tolling"]; *Portfolio Recovery Assoc., LLC v King*, 14 NY3d 410, 927 N.E.2d 1059, 901 N.Y.S.2d 575 [2010] [determining that Delaware's tolling provision did not extend a nonresident plaintiff's time to bring a lawsuit in New York on a cause of action that accrued in Delaware]; *but see GML, Inc. v Cinque & Cinque, P.C.*, 9 NY3d 949, 951, 877 N.E.2d 649, 846 N.Y.S.2d 599 [2007] [borrowing Tennessee's one-year statute of limitations, but not its tolling provisions, because "[a] conclusion to the contrary would cause the statute of limitations to be tolled indefinitely against these defendants[, and the Court did] not believe that the Legislature intended this result in enacting CPLR 202"]).

As Professor Siegel explains, CPLR 202 does not

"necessarily [call for] a 'borrowing' [because] the statute really dictates a comparison, with a 'borrowing' of the foreign period only if it is the shorter of the two compared"; and

"[t]he periods that are compared are the 'net' periods.

That is, the New York period, with all relevant New York extensions and tolls integrated, is one prong of the comparison, and the foreign period, with the foreign tolls and [*21] extensions integrated, is the other. The New York tolls are not superimposed on the foreign period, or vice versa." (Siegel, NY Prac § 57 at 82 [5th ed 2011]).

But it does not follow, as defendants insist, that section 202 required Norex's state court action to be timely under Alberta law when filed in March 2011, either because Alberta's statute of limitations had not yet expired or Norex's claims were saved by an Alberta tolling statute.

Notably, none of the tolling cases relied on by defendants dealt with a *refiled* action like Norex's. These decisions merely show that when assessing whether Norex's *original* action was timely for purposes of CPLR 205 (a), Supreme Court was required to consider the "'net' period[] . . . the [Alberta] period, with the [Alberta] tolls and extensions integrated" (*id*.). Here, the absence of a tolling or savings provision in Alberta law had no practical effect with regard to Norex's original lawsuit. Norex says that it filed its federal complaint within weeks of the events that gave rise to its claims, thereby making its federal action timely under "any potentially applicable" statute of limitations, without tolling. Defendants do not gainsay this.

*Besser*

Next, [*22] defendants find support for their position in *Besser v Squibb & Sons* (146 AD2d 107, 539 N.Y.S.2d 734 [1st Dept 1989], *affd without opinion* 75 NY2d 847, 552 N.E.2d 171, 552 N.Y.S.2d 923 [1990]). *Besser* involved the relationship between CPLR 202 and CPLR 214 (c) (2). The latter provision "revived" [**9] time-barred causes of action arising out of exposure to diethylstilbestrol (DES) and other specified toxic substances that might cause harmful effects years, and sometimes decades, after exposure. Section 214 (c) (2) granted plaintiffs claiming injuries from exposure to these substances a one-time, one-year window during which to bring suits that were either barred as of the statute's effective date, or had been dismissed prior to its effective date solely because the applicable limitations period had expired.

The plaintiff in *Besser* was a non-New York resident at the time her personal injury claim accrued in either Pennsylvania or New Jersey. Further, her claim was

untimely under the laws of both states. As a result, if CPLR 202 applied, her lawsuit was time-barred. Accordingly, she argued that CPLR 202 was not applicable in actions authorized by the revival statute.

The Appellate Division disagreed, observing that "the Legislature's intent" [*23] in enacting the revival statute was "to provide to *New York residents only* -- not the entire world -- a one-year window period in which to sue for claims otherwise barred by law" (*id.* at 110 [emphasis added]).

Defendants reason by analogy that CPLR 202 should trump CPLR 205 (a), too. But CPLR 214 (c) (2) and CPLR 205 (a) bear no resemblance to each other beyond their shared general character as remedial statutes. Importantly, there is no evident legislative intent to limit the savings statute's beneficial scope to resident plaintiffs. As Judge Cardozo explained nearly a century ago, New York's savings statute

"is designed to insure *to the diligent suitor* the right to a hearing in court till he reaches a judgment on the merits. Its broad and liberal purpose is not to be frittered away by any narrow construction. The important consideration is that by invoking judicial aid, a litigant gives timely notice to his adversary of a present purpose to maintain his rights before the courts" (*Gaines v City of New York*, 215 NY 533, 539, 109 N.E. 594 [1915]) [emphasis added]; *see also Goldstein v New York State Urban Dev. Corp.*, 13 NY3d 511, 521, 921 N.E.2d 164, 893 N.Y.S.2d 472 [2009] [Section 205 (a) "shares with its venerable predecessor provisions [*24] the broad and liberal purpose of remedying what might otherwise be the harsh consequence of applying a limitations period where the defending party has had timely notice of the action" (internal quotation marks omitted)]).

*Forum Shopping*

Finally, defendants accuse Norex of forum shopping in contravention of CPLR 202, having made a "strategic decision" to litigate first in Russia and then in federal court, where it did not assert any New York claims, before finally settling on state court when these earlier lawsuits proved unsuccessful. Norex counters that while CPLR 202 is meant to prevent a nonresident plaintiff from forum shopping by suing in New York courts to take advantage of a [**10] longer statute of limitations, that policy has been "fully served" here. This is so, Norex argues, because it filed its original complaint in federal court in New York "within weeks of the events that [gave] rise to its claims, putting defendants on notice and making those claims timely under *any* statute of limitations, including the Alberta statute of limitations that the [Appellate Division] held must be borrowed under CPLR 202." Norex adds that the federal courts specifically rejected forum shopping as [*25] a motive for its federal lawsuit. Further, "[b]ecause Norex was manifestly not forum shopping when it filed its first action in New York, Norex cannot be forum shopping by re-filing that action in New York in accordance with CPLR 205 (a)."

We agree with Norex that, once it timely commenced its federal court action in New York, the borrowing statute's purpose to prevent forum shopping was fulfilled, and CPLR 202 had no more role to play. Because Norex's "prior" federal court action was timely under the borrowing statute, the "new" action that it brought pursuant to the savings statute "would have been timely commenced at the time of the commencement of the prior action" (CPLR 205 [a]). Stated another way, it is irrelevant that Alberta law does not have a savings statute similar to CPLR 205 (a) because at the point in time when Norex filed its "new" action in Supreme Court, the borrowing statute's requirements had already been met. In our view, this reading of the way in which CPLR 202 and CPLR 205 (a) interrelate best comports with statutory language, and honors both the borrowing statute's purpose to prevent forum shopping and the savings statute's goal to "implement[] the vitally important [*26] policy preference for the determination of actions on the merits" (*Goldstein*, 13 NY3d at 521 [internal quotation marks omitted]; *see generally* Horowitz, "Burden of Proof: 'A Dangerous Intersection,'" 86 NY State Bar Journal at 20 [May 2014]).

III.

The lower courts' rulings with respect to 28 USC § 1367 (d) evoked interest in legal academic circles. An amicus curiae brief on this topic, which was jointly filed by Professors Thomas D. Rowe, Stephen B. Burbank and Thomas M. Mengler, supported Norex's motion for leave to appeal; another amicus brief, filed by Professor Jonathan Siegel, similarly took issue with the Appellate Division's interpretation of section 1367 (d). Professors Rowe, Burbank and Mengler, who endorsed Professor Siegel's brief, assisted in drafting the federal supplemental jurisdiction statute.

The amici curiae disagree with the Appellate Division's holding that, as summarized by Professor Siegel, "§ 1367 (d)'s tolling period does not apply because New York's CPLR 205 (a) *generally* provides a longer tolling period, even though . . . CPLR 205 (a) does not apply to this *particular* case" by operation of CPLR 202. Professors Rowe, Burbank and Mengler call this outcome an "intolerable [*27] Catch-22." Professor Siegel offered various reasons why the Appellate Division was incorrect and how its holding "disserve[d] the goals of judicial economy, [**11] convenience, and fairness" which section 1367 (d) was designed to promote.

Because we have determined that Norex's state court action is not time-barred by CPLR 202, we need not and do not consider whether Norex's claims were timely filed in state court pursuant to 28 USC 1367 (d). We note, though, that in light of our disposition of this appeal, the complained-of "Catch-22" is unlikely to recur.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.

* * * *

Order reversed, with costs, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein. Opinion by Judge Read. Chief Judge Lippman and Judges Graffeo, Smith, Pigott, Rivera and Abdus-Salaam concur.

Decided June 26, 2014