UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DONALD M. THEA and DEBORAH L. THEA,

                Plaintiffs,

    -against-

NEIL C. KLEINHANDLER, individually and as
trustee of the FREDERICA FISHER THEA
REVOCABLE TRUST, NEW SCHOOL
UNIVERSITY, and ERIC T. SCHNEIDERMAN
as Attorney General of the State of New York,

                Defendants.
-----------------------------------------------------------x

13-cv-4895 (PKC)

MEMORANDUM
AND ORDER

CASTEL, U.S.D.J.

        Plaintiffs Donald Thea and Deborah Thea (the "Theas") initially brought this action in their individual capacity against defendants Neil Kleinhandler, the Frederica Fisher Thea Revocable Trust, the New School University (the "New School"), and Eric Schneiderman, as Attorney General of the State of New York. The Theas had requested a declaration as to their rights to property allegedly belonging to the estate of Frederica Fisher Thea, their stepmother, as well as other relief.

        In a Memorandum and Order dated May 12, 2014, the Court dismissed the Theas' claims without prejudice for lack of subject matter jurisdiction. The Theas now move for leave to amend, asserting that they have been duly appointed administrators of Frederica's estate. The proposed amended complaint asserts claims on behalf of the Theas in their individual capacity, in their capacity as creditors of the estate, and in their capacity as special administrators of the estate. For reasons explained, the Theas' motion is denied.

BACKGROUND

The following facts are taken from the Proposed Second Amended Complaint (the "PSAC"), documents incorporated by reference in the PSAC, and matters of which judicial notice may appropriately be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152–53 (2d Cir. 2002).  All facts are assumed to be true for the purpose of deciding plaintiffs' motion to amend.  All reasonable inferences are drawn in favor of the plaintiffs.  See In re Elevator Antitrust Litig., 502 F.3d 47, 50–51 (2d Cir. 2007) (per curiam); Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002).

In or about 1985, Stanley Thea ("Stanley") married his third wife, Frederica Fisher Thea ("Frederica").  (Viola Decl. Ex. A ("PSAC") ¶ 13.)  On April 13, 1995, Stanley and Frederica executed an agreement under which they agreed to execute mutually beneficial wills (the "Agreement").  (See id. ¶¶ 14, 22, 24.)  The Agreement was subsequently modified on January 12, 1996, to reflect changes made to Stanley's Last Will and Testament.  (Id. ¶ 15.)  Under the terms of the Agreement, Stanley was to execute a will that bequeathed the majority of his estate to Frederica.  (PSAC Ex. B, at 2–4.)  In the event that Frederica were to predecease Stanley, the Theas, his children by his first marriage, would inherit.  (Id.; PSAC ¶ 13.)  In exchange, Frederica was to execute a Last Will and Testament naming Stanley as the beneficiary of her entire estate.  (PSAC Ex. B, at 1, 32–33.)  Should Stanley predecease her, the entire estate would go to the Theas.  (Id.)  Under the terms of the Agreement, neither party was to alter or revoke their Last Will and Testament without the written consent of the other.  (Id. at 1.)  On January 12, 1996, Stanley executed a Last Will and Testament in accordance with the Agreement.  (Id.)  On April 13, 1995, Frederica executed a Last Will and Testament in accordance with the Agreement.  (See id.; PSAC ¶ 15.)  The Agreement and wills were all

executed in New York.  (See PSAC Ex. B, at 1.)  At the time they entered into the Agreement, both Stanley and Frederica were residents of New York.  (See id. at 2, 32.)

On September 1, 1998, Stanley passed away, predeceasing Frederica.  (PSAC ¶ 29.)  Pursuant to Stanley's Last Will and Testament, which conformed to the Agreement, Frederica inherited the majority of Stanley's estate.  (See id. ¶ 31.)  The estate included property located in Manhattan and Queens.  (PSAC Ex. B, at 3.)  After Stanley's death, but no later than December 2002, Frederica created the Frederica Fisher Thea Revocable Trust (the "Trust").  (PSAC ¶ 44.)  The Trust named Frederica and defendant Neil Kleinhandler as co-trustees and the New School as the sole remainder beneficiary of the Trust.  (Id. ¶¶ 7, 47.)  Subsequently, Frederica transferred all, or substantially all, of her assets into the Trust.  (Id. ¶¶ 49, 51–52, 57.)

For the remainder of Frederica's life, the Trust managed the assets for her benefit.  (See id. ¶¶ 51–58.)  Among the actions taken by the Trust in managing the assets were the sale of the New York properties to facilitate the purchase of property in California.  (See id. ¶¶ 51–54, 56.)  Frederica passed away on or about February 4, 2012.  (Id. ¶ 59.)  At the time of her death, Frederica was a resident of California.  (See id. ¶ 58.)  After Frederica's death, Kleinhandler was contacted by law enforcement officials and arranged for the disposition of Frederica's body.  (Id. ¶¶ 65, 67.)  Kleinhandler did not inform the Theas of Frederica's death and, since her death, has not administered the Trust for their benefit.  (Id. ¶ 75.)

The Theas brought suit against Kleinhandler on July 15, 2013.  (Docket # 1.)  In their Complaint, the Theas requested that the Court declare that Frederica and the Trust's assets rightfully belonged to them, and that any transfers of assets in violation of the Agreement, or subsequent to Frederica's death were null and void.  (Am. Compl. ¶¶ 84–88, Docket # 12.)  The Theas also alleged that the transfer of assets into the Trust was a violation of the Agreement and

void pursuant to section 7-3.1 of the New York EPTL.  (Id. ¶¶ 95–97.)  The Theas further asserted that Frederica's breach of the Agreement resulted in the Trust assets being placed in a constructive trust for their benefit.  (Id. ¶¶ 98–99.)  The Theas also requested an equitable accounting in order to determine the assets that rightfully belonged to Frederica's estate.  (Id. ¶¶ 104–06.)  Finally, the Theas alleged that Kleinhandler, as the personal representative of Frederica's estate, breached a fiduciary duty toward them by not administering her assets in their interest.  (Id. ¶¶ 109–11.)  At that time, no probate proceedings had been initiated regarding her estate.  (PSAC ¶ 76.)

In the May 12 Memorandum and Order, the Court dismissed the Theas' claims for lack of subject matter jurisdiction because full adjudication of the Theas' claims required a representative of Frederica's estate to be a party.  Thea v. Kleinhandler, No. 13-cv-4895 (PKC), 2014 WL 2111637, at *6 (May 13, 2014).  The Memorandum and Order allowed "an administrator or executor of [Frederica's] estate" to seek leave to amend within twenty-one days of the Order.  Id.

Subsequently, the Theas initiated probate proceedings regarding Frederica's estate in the Superior Court of California, County of Monterey.  (See id. ¶ 77; PSAC Ex. A, at 1.)  A hearing was scheduled for August 13, 2014.  (Viola Decl. ¶ 8.)  As this date was beyond the twenty-one-day time period provided by the Court, the Theas filed an "Ex-Parte Petition for Letters of Special Administration" in order to continue the action in this Court.  (Viola Decl. ¶ 8; Viola Decl. Ex. B, at 1.)  A hearing was scheduled for May 28, 2013.  (Viola Decl. Ex. B, at 1.)  Notice was mailed to all parties, including Kleinhandler and the New School, via Federal Express on May 23, 2013, the Friday before the Memorial Day holiday.  (Id. at 2–3.)

Prior to the May 28, 2013, hearing, counsel for the New School submitted a letter to the Superior Court objecting to the Theas' appointment. (Harris Aff. Ex. 2, at 3–4.) In the letter, Counsel asserted that the "special circumstances" warranting emergency relief were "entirely of [the Theas'] own creation" and further noted that the "factual circumstances surrounding Frederica's Will [were] far from clear-cut." (Turkle Aff. Ex. 3, at 2–3.) Accordingly, the New School requested the hearing be postponed so that interested parties could "review [the Theas'] request, confer with counsel, retain counsel in California if needed, and have a full and fair opportunity to be heard on [the Theas'] application." (Id. at 3.)

The Theas and Frederica's step brother, Ned Gershenson, appeared at the hearing. (Harris Aff. ¶ 7; Harris Aff. Ex. 2, at 3.) Counsel for the New School attempted to appear at the hearing telephonically, but was unable to do so. (See Harris Aff. Ex. 2, at 3.) At the hearing, Judge Kingsley, the judge assigned to the California action, reviewed the issues raised in the New School's letter and noted that they did "not relate to [the appointment]." (Id. at 1, 4.) Consequently, the Theas were allowed to proceed. (Id. at 4.) Judge Kingsley noted that allowing the Theas to proceed did "not mean that we're making a finding in anybody's favor at this point." (Id. at 4.) Gershenson did not object to the Theas' appointment. (Id. at 5.)

After the hearing, Judge Kingsley approved the Theas' petition and issued an Order for Probate which appointed them special administrators of Frederica's estate. (Id. at 5.) Under the terms of the appointment, the Theas were granted the authority to (1) "take possession of all real and personal property of the decedent and to preserve it from damage, waste and injury;" (2) "commence and maintain or defend suite and other legal proceedings involving the estate;" and (3) "collect all claims, rents and other income belonging to the estate." (PSAC Ex. A, at 2.) Letters of Appointment were issued the same day. (Id. at 3–4.)

On June 2, 2014, the Theas sought leave to file a Second Amended Complaint. (Docket # 44.) The PSAC alleges six distinct causes of action, brought by the Theas in various capacities. Count I of the PSAC is brought by the Theas in their individual capacity and requests a declaration that the assets of the Trust belong to them. (PSAC ¶¶ 95–100.) Count II of the PSAC, brought by the Theas as special administrators on behalf of Frederica's estate, requests a declaration that the assets of the Trust are estate property. (Id. ¶¶ 106–11.) Count III of the PSAC is brought by the Theas as creditors of Frederica's estate and requests a declaration that any transfers of assets to the Trust are null and void. (Id. ¶¶ 116–19.) Counts IV and V request that the Court impose a constructive trust over the Trust assets and order an equitable accounting. (Id. ¶¶ 121–135.) Finally, Count VI alleges that Kleinhandler, by failing to administer Frederica's estate for the Theas' benefit, breached his fiduciary duty toward Frederica's estate, the Theas individually, and the Theas as creditors of the estate. (Id. ¶¶ 136–141.)

Donald Thea is a citizen of Massachusetts. (Id. ¶ 1.) Deborah Thea is a citizen of California. (Id. ¶ 2.) At the time of her death, Frederica was a citizen of California. (See id. ¶ 58.) Kleinhandler is a citizen of New York and the sole trustee of the Trust. (Id. ¶¶ 5–6.) At all times of its existence, the Trust has been governed by New York law. (Id. ¶ 45–46.) The New School is a not-for-profit organization located in New York. (Id. ¶ 7.) Defendant Eric Schneiderman, the Attorney General of New York, is named as a party pursuant to the New York Estate Powers and Trusts Law § 8-1.4 and is a citizen of New York. (Id. ¶ 10.) Jurisdiction is based on diversity of citizenship. See 28 U.S.C. § 1332(a).

LEGAL STANDARD

Rule 15(a)(2), Fed. R. Civ. P., provides that a party may amend its pleading with leave of the court, and that a "court should freely give leave when justice so requires." "This permissive standard is consistent with our strong preference for resolving disputes on the

merits." Williams v. Citigroup. Inc., 659 F.3d 208, 212–13 (2d Cir. 2011) (internal citation and quotation marks omitted). "[U]ndue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment" will serve to prevent an amendment prior to trial. Dougherty, 282 F.3d at 87–88 (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). An amendment to a pleading is considered futile "if a proposed claim could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." Id. at 88.

To survive a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief can be granted, "a complaint must contain . . . sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See Elevator Antitrust Litig., 502 F.3d at 50. Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678. Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

"[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Chambers, 282 F.3d at 152 (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006) (quoting

Chambers, 282 F.3d at 152–53)).  "[A] plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough."  Chambers, 282 F.3d at 153.  "[E]ven if a document is integral to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document."  DiFolco, 622 F.3d at 111 (internal quotation marks and citation omitted).

## CHOICE OF LAW

As Frederica was a resident of California at the time of her death, issues regarding the governance of her estate, such as the distribution of estate assets to beneficiaries or the appointment of an executor, are governed by California law.  Cal. Prob. Code § 7051.  Though Frederica was domiciled in California, the Trust documents state that it is governed by New York law.  (PSAC ¶ 45.)  Accordingly, claims directed against the Trust independent of its alleged status as part of Frederica's estate would be governed by New York law.

The parties disagree as to whether New York or California law should apply to the claims regarding the Agreement.  As jurisdiction is premised on diversity of citizenship, the Court looks to the choice of law rules of New York, the forum state.  Liberty Synergistics Inc. v. Microflo Ltd., 718 F.3d 138, 151 (2d Cir. 2013) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 494–97 (1941)).  In making a choice of law determination in contract cases, courts in New York use a "center of gravity" or "grouping of contacts" analysis.  In re Allstate Ins. Co., 81 N.Y.2d 219, 226 (1993).  Factors to be considered include "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties."  Id. at 227.

At the time of contracting, Stanley and Frederica were both residents of New York and entered into the Agreement there.  (PSAC Ex. B, at 1–2, 32.)  Further, at the time of

contracting, the Agreement concerned property located in New York.  (Id. at 3.)  At the time of her death, Frederica was a resident of California and owned property there.  (PSAC ¶¶ 56, 58.) As the majority of events surrounding the formation and execution of the Agreement took place in New York, the Court concludes that it is the "center of gravity" of the contract.  Accordingly, the Court will apply New York law to claims concerning the execution of the Agreement.

## DISCUSSION

### I. The Theas' Status as Special Administrators

The New School asserts that, because it was unable to participate in the May 28, 2014, hearing, it was denied of an opportunity to be heard, making the method by which the Theas obtained their alleged appointment in the Superior Court of California "fundamentally unfair."

It is "well settled" that a federal court may not "entertain an action that would interfere with pending probate proceedings in a state court."  Ashton v. Josephine Bay Paul & C. Michael Paul Found., Inc., 918 F.2d 1065, 1071 (2d Cir. 1990).  Further, federal courts are required to give full faith and credit to judicial proceedings of state courts.  28 U.S.C. § 1738. As the Theas were appointed special administrators as part of ongoing probate proceedings in state court in California, this Court is bound by the state court's actions and recognizes that the Theas were given authority specifically to prosecute the instant action on behalf of Frederica's estate.  (PSAC Ex. A, at 2).  Consequently the Court concludes that, unless and until a competent court finds otherwise, the Theas have the authority to act on behalf of Frederica's estate in the instant action.

### II. The Theas' Claims

The Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., permits federal courts to declare the "rights and other legal relations" of parties to an "actual controversy."  An "actual

controversy" is deemed to exist when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 411 F.3d 384, 388 (2d Cir. 2005) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)). In determining whether subject matter jurisdiction exists for a declaratory judgment action, a court must "conceptually realign the declaratory judgment parties and claims and analyze them as they would appear in a coercive suit." Granti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc., 697 F.3d 59, 67 (2d Cir. 2012). Thus, "'a complaint seeking a declaratory judgment is to be tested, for purposes of the well-pleaded complaint rule, as if the party whose adverse action the declaratory judgment plaintiff apprehends had initiated a lawsuit against the declaratory judgment plaintiff." Id. at 68 (quoting Fleet Bank, N.A. v. Burke, 160 F.3d 883, 886 (2d Cir. 1998)).

### a. The Theas' Claim in their Individual Capacity

Count I, the declaratory judgment claim brought by the Theas in their individual capacity, is identical to the declaratory judgment claim presented in the Amended Complaint. (Compare Am. Compl. ¶¶ 80–90 with PSAC ¶¶ 91–100.) As the Court noted in the May 12 Memorandum and Order, the Theas do not have standing to bring such an action in their individual capacity. Thea, 2014 WL 2111637, at *4. Accordingly Count I would not withstand a motion to dismiss and allowing the Theas to include it in an amended pleading would be futile.

### b. The Theas' Claim in their Capacity as Special Administrators

Count II, which requests a declaration that the Trust assets are part of Frederica's estate, is brought by the Theas in their capacity as Special Administrators. In this role, as estate representatives, they have standing to bring the action. See Di Lorenzo v. Ciancio, 373 N.Y.S.2d 167, 170 (2d Dep't 1975). Kleinhandler and the New School do not challenge the Theas's

standing to bring this claim as estate representatives, but argue that it is time barred under section 366.3 of the California Code of Civil Procedure and section 213 of the New York CPLR.

The parties dispute whether the California or New York statute of limitations governs the Theas' claims. As the instant action is premised on diversity of citizenship, the Court will apply the statute of limitations of the forum state, here New York. Cantor Fitzgerald Inc. v. Lutnick, 313 F.3d 704, 719 (2d Cir. 2002). "Under New York's 'borrowing statute,' [CPLR § 202], a case filed by a non-resident plaintiff requires application of the shorter statute of limitations as well as all applicable tolling provisions, provided by either New York or the state where the cause of action accrued." Id.

Under New York law, a cause of action sounding in contract accrues "at the time and in the place of the injury." Global Fin. Corp. v. Triarc Corp., 93 N.Y.2d 525, 529 (1999). When an alleged injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." Id. As special administrators to Frederica's estate, the Theas stand in the estate's shoes to prosecute its claims. Because Frederica was a citizen of California at the time of her death, the Theas are considered to be citizens of California for the purposes of pursuing the claim. 28 U.S.C. § 1332(c)(2); (See PSAC ¶ 58.) As the claim alleges that transfers of assets from Frederica's estate to the Trust were a violation of the Agreement, the Court concludes that the PSAC alleges harm sustained by the estate. (See PSAC ¶¶ 108–09.)

The Theas argue that, though the estate suffered harm, the property at issue, namely the Trust assets, are located in New York. When a complaint seeks the recovery of property in New York, New York law will generally apply. Wyatt v. Fulrath, 16 N.Y.2d 169, 173 (1965).

According to the PSAC, the trust is alleged to have sold its New York properties and purchased property in California. (PSAC ¶¶ 51–54, 56.) No other tangible property is alleged to be part of Frederica's estate. (See id.) According to Frederica's alleged Last Will and Testament, the Theas were to inherit the entire estate. (PSAC Ex. B, at 32–33.) The Last Will and Testament makes no reference to specific property. (See id.) As Frederica was free to manage her assets as she saw fit, the sale of the New York properties during her lifetime would not constitute a breach of the Agreement. Had Frederica sold the New York properties, acquired the California property, but left that California property to the Theas, they would have no claim to the property or to the proceeds. Indeed, it is the California property, or the proceeds of any sale that the Theas seek in this action.

The Theas allege that Frederica transferred the majority of her assets to a revocable trust, appointing herself and Kleinhandler as co-trustees. (PSAC ¶¶ 47, 49, 57.) As the trust was revocable, Frederica had control over the assets until her death, at which time the trust became irrevocable. See In re Malasky, 736 N.Y.S.2d 151, 152–53 (3d Dep't 2002). Thus, though Frederica established the Trust at some point prior to December 2002, she could have revoked the trust at any time until her death on February 4, 2012. (See PSAC ¶¶ 44, 59). At that time, Frederica's estate was no longer in control of the Trust assets and can be said to have suffered a loss. See Rubin v. Irving Trust Co., 305 N.Y. 288, 298 (1953) (noting that an action to enforce an agreement to make a will is instituted after the death of the promisor).

Consequently, because Frederica was a resident of California, in control of real property in California, and is not alleged to have had control over any property in New York, the non-economic harm suffered by the estate concerns assets located in California. As such, the Court concludes that the claim accrued in California, the location of Frederica's estate.

Under section 366.3 of the California Code of Civil Procedure, an action that "arises from a promise or agreement with a decedent to distribution from an estate . . . may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply." Cal. Civ. Proc. Code § 366.3(a). The limitations period of one year may not be tolled or extended for "any reason," with limited exceptions. Cal. Civ. Proc. Code § 366.3(b). According to the PSAC, Frederica died on February 4, 2012, and the Theas initially brought suit on July 15, 2013, more than one year afterwards. (PSAC ¶ 59; Docket # 1.)

The Theas do not dispute that had they directly brought their claim against Frederica's estate in California under California law, it would be subject to section 366.3. To avoid application of section 366.3, they assert that it only applies to claims brought against an estate, and not to claims brought on behalf of an estate.

California courts have held that section 366.3 reaches "any action predicated upon the decedent's agreement to distribute estate or trust property in a specified manner." Ferraro v. Camarlinghi, 161 Cal. App. 4th 509, 555 (6th Dist. 2008). Claims that have been precluded by the California courts include claims of breach of contract, breach of express trust, fraud, undue influence, unjust enrichment, constructive trust, conversion, interference with advantageous relations, declaratory and injunctive relief, an accounting, and claims by creditors against an estate. Id. at 527; In re Estate of Ziegler, 187 Cal. App. 4th 1357, 1365 (4th Dist. 2010).

There is nothing in the language of section 366.3 that limits its application based upon the identity of the party bringing or defending the claim. If the action "arises from a promise or agreement with a decedent to distribution from an estate," then the limitations period in section 366.3 would apply. The plain language of the statute reads on the Theas' claim.

The legislative history is also instructive. When section 366.3 was passed, the California Senate Judiciary Committee noted that the statute of limitations applicable "to a claim against a decedent's estate based upon a contract to make or to revoke a will or trust" was not clear and depended on "the theory used to establish the contract." See S. Comm. on Judiciary, Analysis of Assemb. B. No. 1491 (1999-2000 Reg. Sess.), as amended Jan. 3, 2000, at 2, 11. The California Senate Judiciary Committee further stated that requiring actions to be filed within one year from the date of death would bring "consistency to the statutes of limitations for enforcement of claims against a decedent" and that allowing a claim to be commenced later would "bring hardship to beneficiaries and administrators alike." Id. at 11–12. Thus, section 366.3 was intended to harmonize the various statutes of limitations already in use for causes of action related to an agreement to make a will and to make them consistent with claims against an estate that had accrued before death.

The Theas argue that, even if section 366.3 applies to their claims, Kleinhandler should be equitably estopped from invoking the defense. Under California law, the doctrine of equitable estoppel may apply to section 366.3. McMackin v. Ehrheart, 194 Cal. App. 4th 128, 140. To invoke the doctrine, the Theas would need to allege that Kleinhandler, through action or inaction, prevented them from timely bringing suit. See id. at 142. Though the PSAC notes that Kleinhandler did not inform the Theas of Frederica's death, despite an obligation to do so, it does not specify when the Theas learned of her death and thus knew they potentially had a claim. As this information is not present in the PSAC, the Court is unable to conclude that Kleinhandler should be estopped from invoking the statute of limitations in this instance.

Therefore, the Court concludes that allowing the Theas to amend their complaint to add Count II would be futile.

c. <u>The Theas' Remaining Claims</u>

The Theas' remaining claims all derive from the alleged Agreement between Stanley and Frederica and are dependent on a finding that the Trust assets are rightfully part of the estate. As the underlying claim against Kleinhandler and the Trust is untimely, the remaining claims would not withstand a motion to dismiss. Consequently, allowing the Theas to amend their complaint to add the remaining claims would also be futile.

## CONCLUSION

For the foregoing reasons, the Theas motion for leave to amend (Docket # 46) is DENIED. The Clerk shall enter judgment for the defendants.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
August 1, 2014